**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Joseph Anthony JENKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 12, 2014.

Filed July 15, 2014.

David R. Crowley, Public Defender, Bellefonte, for appellant.

Daniel C. McKenrick, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

BEFORE: DONOHUE, J., WECHT, J., and STRASSBURGER, J.*

OPINION BY WECHT, J.:

Joseph Anthony Jenkins appeals his July 11, 2013 judgment of sentence. We affirm.

The trial court has summarized the factual and procedural history of this case as follows:

* Retired Senior Judge assigned to the Superior    Court.

[Jenkins] and his co-defendant, Zachariah Johnson [(collectively, "Defendants")], were charged with Robbery, Conspiracy, and Simple Assault for an incident that occurred on July 9, 2011[,] outside of the Parkway Plaza Apartments [in State College, Pennsylvania.] Defendants approached Anthony Caracillo while he was urinating by a dumpster behind the apartment complex and asked him for money to buy more beer for the party that they had all been attending. Mr Caracillo gave one of the [D]efendants a dollar, and then walked past them. Defendants then attacked Mr. Caracillo and stole possessions off of his person, ultimately leaving him injured, bloodied, and with a broken jaw. A jury trial was held on May 21, 2013. [Jenkins] was found guilty of Robbery—Bodily Injury, 18 Pa.C.S. § 3701(a)(1)(iv), 18 Pa.C.S. § 306; Criminal Conspiracy, Robbery—Bodily Injury, 18 Pa.C.S. § 3701(a)(1)(iv), 18 Pa. C.S. § 903(a)(1); and Simple Assault, 18 Pa.C.S. § 2701(a)(1), 18 Pa.C.S. § 306(a). [Jenkins] was sentenced on July 2, 2013, to a total sentence of 3 1/2 to 7 years in a State Correctional Facility. [On July 12, 2013, Jenkins] filed [a] Post–Sentence Motion arguing that Simple Assault merges with Robbery [and] that this Court therefore erred in imposing a separate sentence on that charge.

Trial Court Opinion ("T.C.O."), 10/10/2013, at 1–2. On October 10, 2013, the trial court filed an opinion and order denying Jenkins' motion.

On November 5, 2013, Jenkins filed a timely notice of appeal. On November 6, 2013, the trial court directed Jenkins to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b). On November 20, 2013, Jenkins filed a timely Rule 1925(b) statement. On November 26, 2013, the trial court filed its Rule 1925(a) opinion, which responded to Jenkins' allegation of error by referring to the reasoning previously stated in the court's October 10, 2013.opinion.

Jenkins has raised a single issue for our consideration: "Did the lower court err when it imposed an illegal sentence by failing to merge the offenses of robbery and simple assault?" Jenkins' Brief at 8.

Whether Jenkins' convictions merge for the purposes of sentencing is a question implicating the legality of his sentence. As such, our standard of review is *de novo* and the scope of our review is plenary.[1] *Commonwealth v. Collins*, 564 Pa. 144, 764 A.2d 1056, 1057 n. 1 (2001).

Section 9765 of the Pennsylvania Sentencing Code provides as follows regarding the merger of crimes for sentencing purposes:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher[-]graded offense.

42 Pa.C.S. § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. *Id.*

Despite the above codification of Pennsylvania merger doctrine, Pennsylvania

---

1. We note that challenges to the legality of sentence are non-waivable. *Commonwealth*

*v. Robinson*, 931 A.2d 15, 24 (Pa.Super.2007).

courts historically have struggled to articulate and apply the proper test for merger claims. In *Commonwealth v. Jones,* our Supreme Court addressed the issue of merger pursuant to section 9765, but was unable to establish a consensus approach. 590 Pa. 356, 912 A.2d 815 (2006) (plurality); *see Commonwealth v. Williams,* 920 A.2d 887, 889 (Pa.Super.2007) (noting that *"Jones* generated a 'lead opinion' approach to merger and a 'dissenting opinion' approach to merger"). In the lead plurality opinion in *Jones,* Justice Castille (now Chief Justice) adopted a "practical, hybrid approach" that required courts to "evaluate the statutory elements [of each crime], with an eye to the specific allegations leveled in the case." 912 A.2d at 822. Justice Newman wrote a dissent favoring the adoption of a strict statutory test in accordance with section 9765. *Id.* at 827 (Newman, J., dissenting) ("[T]he elements of these two crimes differ, and sentencing thus cannot be merged pursuant to our jurisprudence and the legislative intent as evidenced by 42 Pa.C.S. § 9765.").

One year after *Jones,* a panel of this Court addressed the merger doctrine in *Williams.* Therein, this Court adopted Justice Newman's approach as more accurately reflective of our merger doctrine jurisprudence and the legislative intent of section 9765. *Id.* at 891. Likewise, the Pennsylvania Supreme Court since has rejected the "practical, hybrid approach" of the *Jones* plurality and held that the statutory language precludes courts from merging sentences when each offense contains a statutory element that the other does not. *Commonwealth v. Baldwin,* 604 Pa. 34, 985 A.2d 830, 834 (2009).

Prior to the implementation of section 9765, it appears that, under Pennsylvania common law, separate convictions for robbery and simple assault generally merged for sentencing purposes. *See Common-* *wealth v. Gilliam,* 302 Pa.Super. 50, 448 A.2d 89, 90 n. 1 (1982) (citing *Commonwealth v. Bryant,* 282 Pa.Super. 600, 423 A.2d 407 (1980)). In fact, there are several cases indicating that "lesser" offenses, which are statutorily subsumed by robbery, merged for sentencing purposes. *See Commonwealth v. Welch,* 291 Pa.Super. 1, 435 A.2d 189, 190 (1981) ("[A] conviction for simple assault merges with a conviction for robbery for purposes of sentencing. After the crime of robbery is established no additional facts [are] necessary to prove simple assault."); *Commonwealth v. Brazzle,* 272 Pa.Super. 438, 416 A.2d 536, 538–39 (1979) (holding that a theft charge merged with a robbery charge for sentencing because "theft is a necessary ingredient of robbery"); *Commonwealth v. Guenzer,* 255 Pa.Super. 587, 389 A.2d 133, 135–36 (1978) (holding that "a conviction for simple assault merges with a robbery conviction under 18 [Pa. C.S. §] 3701(a)(1)(ii)").

This line of cases predates our current statutory and case law approach to merger by approximately two decades. Furthermore, these cases do not apply a uniform test in concluding that a conviction for simple assault merges with a conviction for robbery. In *Guenzer,* this Court held that a conviction for robbery pursuant to subsection 3701(a)(1)(ii) merged with a simple assault conviction automatically, without examining the statutory or factual bases of the underlying convictions. *Id.* In *Brazzle,* we stated that a conviction for theft merged with a robbery conviction based upon a significantly different legal rationale: "The general rule is that when one crime is a necessary ingredient of another the offenses merge for the purposes of sentencing and, thus, only one punishment may be imposed." 416 A.2d at 538. Our approach to merger in *Brazzle* was statutorily intensive, and focused upon the fact that a conviction for robbery requires the

perpetrator to commit a theft as a necessary element of the crime. *Id.* at 538–39. Conversely, in *Welch*, we conducted a fact-specific inquiry, and concluded that convictions for robbery and simple assault merged in that case because "[a]fter the crime of robbery was established[,] no additional facts were necessary to prove simple assault." 435 A.2d at 189–90. In *Gilliam*, as in *Guenzer*, this Court suggested that convictions for simple assault always merge with convictions for robbery. 448 A.2d at 90 n. 1.

Our reading of these cases has revealed no consistent approach to the question of merger regarding robbery and simple assault. The only holding that cites a specific standard is *Welch*, which relied upon our Supreme Court's holding in *Com. ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A.2d 920 (1941), as providing the relevant standard for merger:

> The true test of whether one criminal offense has merged in another is *not* (as is sometimes stated) whether the two criminal acts are "successive steps in the same transaction" but it is whether one crime *necessarily involves* another, as, for example, rape involves fornication, and robbery involves both assault and larceny. The "same transaction" test is valid only when "transaction" means a *single act.* When the "transaction" consists of two or more criminal acts, the fact that the two acts are "successive" does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, as, *e.g.,* larceny is merged in robbery, and assault and battery is merged in murder, or they may be two distinct crimes which do not merge.... When one of two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for *both.*

*Welch,* 435 A.2d at 190 (quoting *Ashe,* 21 A.2d at 921 (emphasis in original)).

Assuming, *arguendo,* that the standard discussed in *Welch* and *Ashe* represented our legal standard of review at one time, the adoption of section 9765, as interpreted by *Baldwin,* has abrogated it:

> [The Pennsylvania Supreme Court's] pre-[s]ection 9765 jurisprudence characterized the merger doctrine as, first and foremost, a rule of statutory construction. In *Commonwealth v. Anderson* [538 Pa. 574], 650 A.2d 20 (Pa.1994), [the Court] wrote:
>
> > Generally, the doctrine of merger is a rule of statutory construction *designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction.* If the legislature were to tell us that crime A merges into crime B, the problem would not arise, for the legislative intent would be manifest. *It is in cases where the legislature has not given direction that we must devise a rule.*
>
> 650 A.2d at 21 (emphasis added).
>
> Applying *Anderson* in this case, one can say with certainty that the legislature has provided us with clear direction by its enactment of [s]ection 9765. The statute makes the legislature's intent with respect to merger manifest. That intent focuses solely on the elements of the offenses for which a criminal defendant has been convicted.

*Baldwin,* 985 A.2d at 835 (citations modified).

Based upon the foregoing discussion, we decline to evaluate the instant issue pursuant to any of the myriad standards and approaches announced in the earlier cases discussed above. Section 9765 and the Supreme Court's holding in *Baldwin* represent our lead precedents regarding

questions of merger. However, we will consider the above cases for the general proposition that a conviction for simple assault **may** merge with a robbery conviction for sentencing purposes, if the prerequisites for such merger are clearly established.

Accordingly, we turn to the merits of Jenkins' claim. We begin by assessing whether Jenkins' convictions for simple assault and robbery arise from the same criminal act, or from separate criminal acts. *See Baldwin, supra;* 42 Pa.C.S. § 9765.

In its October 10, 2013 opinion, the trial court asserted that Jenkins' sentences did not merge because Jenkins' crimes constituted separate criminal actions, and, as such, were not subject to the dictates of section 9765. In relevant part, the trial court explained as follows:

> Here, the [c]ourt finds that the crimes do not arise from the same criminal act. [Jenkins] struck Mr. Caracillo on the side of his face, breaking his jaw. This is simple assault. [Jenkins] then forcefully restrained Mr. Caracillo on the ground, and unlawfully stole possessions off his person. This constitutes robbery. *See Commonwealth v. Robinson,* 931 A.2d 15, 25 (Pa.Super.2007); *Commonwealth v. Pettersen,* 49 A.3d 903, 912 (Pa.Super.2012).
>
> Accordingly ... the [c]ourt finds that the crimes did not arise from the same criminal act....

T.C.O. at 2 (citations modified). For the reasons that follow, we agree with the trial court's determination.

Although it represents our lead precedent on merger, the Supreme Court's holding in *Baldwin* did not engage in any meaningful analysis addressing what constitutes a "single criminal act" for the purposes of section 9765. In *Baldwin,* the Supreme Court determined that the appellant's convictions for possession of a firearm without license and carrying a firearm on the public streets of Philadelphia [2] did not merge due to their dissimilar statutory language. 985 A.2d at 837. *Baldwin* confirmed that the legislature intended that the "single criminal act" element be included in the merger test specified at section 9765. *Id.* ("Section 9765 reveals the General Assembly's intent to preclude the courts of this Commonwealth from merging sentences for two offenses **that are based on a single criminal act** unless all of the statutory elements of one of the offenses are included in the statutory elements of the other." (emphasis added)). However, *Baldwin* provides no concrete guidance regarding what constitutes a "single criminal act" for the purposes of merger because our Supreme Court never engaged in any such analysis. Consequently, *Baldwin* has limited value in aiding our analysis in the instant context. Therefore, we look to earlier case law for guidance.

Pennsylvania precedent regarding the differences between single and multiple criminal acts in the merger context, like much of our case law regarding merger, is convoluted. The origin of our current approach to this question is found in *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989), wherein the Pennsylvania Supreme Court held that, "[i]f ... the [defendant] commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Id.* at 1233.

Our Supreme Court's holding in *Weakland* also established that, "if a [defendant]

**2.** 18 Pa.C.S. §§ 6106 and 6108, respectively.

commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime." *Id.* However, in *Anderson,* our Supreme Court specifically abrogated [3] that portion of its holding in *Weakland:*

[I]n all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses. "The same facts" means any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes[,] transactions[,] or encounters.

*Anderson,* 650 A.2d at 22. "Thus, the rule which emerged from *Anderson* was that a single criminal act would supply the necessary elements for as many crimes as were applicable to the act, with the proviso that for sentencing purposes, the greater and lesser included offenses would merge...." *Commonwealth v. Belsar,* 544 Pa. 346, 676 A.2d 632, 634 (1996).

Our Supreme Court's holding in *Commonwealth v. Comer,* 552 Pa. 527, 716 A.2d 593 (1998), confirmed the basic approach announced in *Anderson.* 716 A.2d at 598–99. However, the Supreme Court also stated in *Comer* that we should look to the elements of the crimes involved as charged by the Commonwealth. *Id.* at 599 ("[T]he elements of homicide by vehicle **as charged** are subsumed in the elements of involuntary manslaughter and neither offense requires proof which the other does not." (emphasis added)). In *Commonwealth v. Collins,* 564 Pa. 144, 764 A.2d 1056 (2001), our Supreme Court slightly altered the approach endorsed by *Comer* by holding that we must examine narrowly the statutory elements of potentially merged crimes, as charged by the Commonwealth: "Although *Comer* allows us to look at the elements as charged in the circumstances of the case, it does not permit us to view the circumstances so broadly that we redefine the elements of the crime." *Id.* at 1059.

Therefore, based upon the foregoing discussion, our task is clear. We must determine whether Jenkins' actions in this case constituted a "single criminal act," with reference to elements of the crime as charged by the Commonwealth. *See Collins; Comer; Anderson; Weakland, supra.*[4] If Jenkins' actions are a "single criminal act," we will turn to an analysis of the relevant statutory elements.

The statutory provision regarding simple assault reads as follows:

§ **2701. Simple assault**

**(a) Offense defined.**—Except as provided under section 2702 (relating to

---

**3.** "Although we abrogated *Weakland's* holding with respect to the sentencing effect of committing a single criminal act, we did not abrogate *Weakland's* treatment of multiple criminal acts, which remains the law of Pennsylvania." *Commonwealth v. Belsar,* 544 Pa. 346, 676 A.2d 632, 634 (1996).

**4.** We recognize that these cases were decided and published prior to the General Assembly's adoption of section 9765. However, this Court consistently has applied the above-reproduced standards in discussing the issue of whether a defendant committed a "single criminal act" pursuant to merger in the years since the adoption of section 9765. *See Commonwealth v. Robinson,* 931 A.2d 15, 24 (Pa.Super.2007) (citing the standard announced in *Anderson* ). Furthermore, we have continued to apply these precedents in the wake of *Baldwin. See Pettersen,* 49 A.3d at 911–12; *Commonwealth v. Ousley,* 21 A.3d 1238, 1242–43 (Pa.Super.2011). Thus, we conclude that the cases cited above continue to constitute settled, binding precedent.

aggravated assault), a person is guilty of assault if he:

    (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another.

18 Pa.C.S. § 2701.

The statutory definition of robbery reads, in pertinent part, as follows:

**§ 3701. Robbery.**

(a) **Offense defined.**—

    (1) A person is guilty of robbery if, in the course of committing a theft, he:

        \*        \*        \*

    (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury.

18 Pa.C.S. § 3701. Thus, a conviction for robbery pursuant to subsection 3701(a)(1)(iv) requires the Commonwealth to establish that a defendant inflicted bodily injury upon another, or intentionally put him (or her) in fear of immediate bodily injury, while "in the course of committing a theft." *Id.* A conviction for simple assault requires the Commonwealth to establish that a defendant caused, or attempted to cause, bodily injury to another person. 18 Pa.C.S. § 2701(a)(1).

As charged in the information filed on July 9, 2012, the Commonwealth asserted that Jenkins committed robbery when, with his codefendant, he "assaulted [Caracillo] by punching him in the face causing a facial laceration and fractured jaw. [Caracillo] was forced to the ground, **restrained** and searched for personal belongings, which were stolen from [Caracillo]." Information, 7/9/2012, at 2 (unnumbered, emphasis added). With regard to simple assault, the Commonwealth asserted that

"[d]uring the course of a robbery[, Defendants] assaulted [Caracillo] causing a facial laceration that required stitches and a fractured left jaw." *Id.* at 3.

This description comports with Caracillo's unchallenged recitation of the assault and robbery. In relevant part, Caracillo testified that he was accosted by the Defendants while he was urinating beside a dumpster in the alleyway to the side of the Parkway Plaza Apartments. Notes of Testimony ("N.T."), 5/21/2013, at 90–92. Caracillo testified that the Defendants came up behind him, blocked his way out of the alley while he was urinating, and then asked Caracillo for beer money when he turned to face them. *Id.* at 93–94. Caracillo took out his wallet, and gave the Defendants a dollar. *Id.* at 96–97. Caracillo then walked away from the Defendants and behind the Parkway Plaza Apartments. *Id.* at 98–99.

It was at this point that Caracillo was attacked by the Defendants, who "struck [Caracillo] first with a fist above [his] right eyebrow" and then "hit [Caracillo] a second time along [his] left jaw line." [5] *Id.* at 99. The blows knocked Caracillo to the ground, and the Defendants advised Caracillo to remain prone. *Id.* at 100–101 ("When they first hit me, they said stay on the ground, nigga. . . ."). Thereafter, one of the Defendants put his foot on Caracillo's face and restrained Caracillo while the other assailant searched through Caracillo's pockets. *Id.* at 100. Specifically, the person with his foot on Caracillo's face was "pushing [his] face into the concrete." *Id.* at 100. This was very painful for Caracillo because his face had been injured in the initial assault. *Id.* Following this, the Defendants ordered Caracillo to roll over so that they could take Caracillo's wallet,

---

**5.** Caracillo did not see who punched him, nor did he see whose foot was holding his head

against the concrete. N.T. at 100–101.

which was pinned beneath Caracillo when he fell to the ground. *Id.* at 101. While his head was being pressed into the concrete, Caracillo testified that he was "very frightened." *Id.* at 100.

Based upon the foregoing discussion, we conclude that Jenkins' crimes were the result of multiple criminal acts. The information filed by the Commonwealth enumerates that the element of simple assault, *see* 18 Pa.C.S. 2701(a)(1), was fulfilled when the Defendants punched Caracillo, and knocked him to the ground. No other assaultive conduct is listed at the simple assault charge. The charge of robbery against Jenkins also contains a description of this initial assault. As indicated above, robbery includes as a necessary element that a defendant inflict bodily injury, or put the victim in fear of such immediate bodily injury, while committing a theft. *See* 18 Pa.C.S. § 3701(a)(1)(iv). Had the Commonwealth listed only the assaultive conduct that formed the basis of the simple assault charge against Jenkins at the robbery charge, we would conclude that Jenkins did **not** commit "multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime." *Weakland,* 555 A.2d at

1233. Were it the case that Jenkins' had been convicted of both simple assault and robbery upon the basis of a single criminal act, we would likely order Jenkins' resentencing because simple assault appears to be a lesser included offense of robbery. Specifically, simple assault does not require proof of any statutory element that robbery does not also require.[6]

However, the Commonwealth's description of the conduct forming the basis of the robbery charge against Jenkins also included the Defendants' conduct in restraining Caracillo on the ground. Caracillo's testimony indicates that the Defendants restrained him by holding a foot to his head in a manner that exacerbated his existent facial injuries. N.T. at 100. This additional physical restraint caused Caracillo substantial pain. *Id.* These events would establish the "bodily injury"[7] element of robbery, even in the absence of the facts that established Jenkins' conviction for simple assault. By including the restraint of Caracillo in its description of robbery, the Commonwealth established that Jenkins committed multiple criminal acts beyond the "bare" standard articulated by *Weakland* and *Anderson.*

---

6. *Comer* provides an apt summary of our approach to determining whether a **single** criminal act can support convictions for multiple offenses under Pennsylvania precedent:

> In determining whether the single criminal act could support multiple sentences …, we examined whether the crimes were greater and lesser included offenses, *i.e.,* whether the elements of the lesser included offenses were a necessary subcomponent but not a sufficient component of elements of the other crime.
>
> We recognized that the standard used to determine whether two charges constitute the "same offense" was first articulated by the U.S. Supreme Court in *Blockburger v. U.S.,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932):
>
>> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether they are two offenses or only one is whether **each** provision requires proof of a fact which the other does not.

*Comer,* 716 A.2d at 599 (emphasis added); *see* 42 Pa.C.S. 9765. Instantly, simple assault does not require proof of a fact which robbery does not—the assaultive conduct that is the only necessary element of simple assault is subsumed by robbery's requirement of "bodily injury" (or threat thereof). *See* 18 Pa.C.S. §§ 2701(a)(1), 3701(a)(1)(iv).

7. Under Pennsylvania statute, "bodily injury" is defined as an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

This situation is generally analogous to this Court's holding in *Commonwealth v. Ousley*, 21 A.3d 1238 (Pa.Super.2011), wherein we determined that a defendant's convictions for aggravated assault and robbery did not merge:

> [T]he evidence does not support [the appellant's] contention that there was a single act that formed the basis for these charges, that is, a single blow to the head. The record reflects that the victim was struck in the head with a firearm being carried by [the appellant] that resulted in a bleeding head wound. This was clearly an attempt to cause serious bodily injury. In addition, the evidence reflects that [the appellant], while brandishing the firearm and after striking her on the head, forced her into an office, demanded to know where the company safe was and threatened to shoot her if she did not tell him the truth. This was not a single act that formed the basis for both charges.

21 A.3d at 1243. In *Ousley*, the defendant's additional conduct which formed the independent basis of the robbery charge was much more emphatic then Jenkins' conduct here. Unlike in *Ousley*, Jenkins did not have a weapon and did not specifically threaten Caracillo with further physical harm. However, Jenkins **actually inflicted** further pain upon Caracillo by grinding his face into the concrete. N.T. at 100. Furthermore, we remain cognizant of the settled precedent that Jenkins is not entitled to a "volume discount" for his crimes "simply because he managed to accomplish all the acts within a relatively short period of time." [8] *Commonwealth v. Pettersen*, 49 A.3d 903, 912 (Pa.Super.2012) (citing *Anderson*, 650 A.2d at 22). Parsing Jenkins' actions, as charged by the Commonwealth, there are additional actions that establish the "bodily injury" element of robbery without reference to the conduct establishing his conviction for simple assault. Although this case presents a close question, we are constrained to conclude that Jenkins' actions constituted "multiple criminal acts," and that Jenkins' convictions for simple assault and robbery were not predicated upon a single criminal act.[9]

---

**8.** This case is also analogous to a specific concern voiced by the Supreme Court in *Anderson,* wherein the Court manifested a willingness to subject perpetrators of robbery to additional punishment when their actions are more violent than necessary to accomplish their ends:

> If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery. But in Pennsylvania, there is a legally recognized difference between these two crimes. The criminal in the latter case may be convicted of more than one crime and sentences for each conviction may be imposed where the crimes are not greater and lesser included offenses.

*Anderson,* 650 A.2d at 22. Like the analogy we drew between this case and *Ousley,* the factual parallel is not perfect. Jenkins did not utilize a weapon or an overt threat of physical harm to accomplish the assault and robbery at issue in this case. However, we read *Anderson* as standing for the general proposition that criminal defendants may expose themselves to multiple convictions from a single criminal episode based upon their actions.

**9.** Our reticence in this conclusion stems from the fact that our current precedent directs our analysis regarding whether a defendant committed single, or multiple criminal acts, to the elements of the crimes as charged by the Commonwealth. *See Comer,* 716 A.2d at 598–99 (rejecting an interpretation of *Anderson* which concluded that "the statutory offenses must be compared without considering the underlying factual circumstances," and analyzing the crimes "as charged"); *Collins,* 764 A.2d at 1059 (stating that *"Comer* allows us to

Thus, Jenkins' convictions for simple assault and robbery are not subject to merger. Because we have determined that Jenkins committed multiple criminal acts, we do not address the second prong of *Baldwin*.

Judgment of sentence affirmed.

STRASSBURGER, J. files a Concurring Opinion.

## CONCURRING OPINION BY STRASSBURGER, J.:

I agree that Jenkins' convictions do not merge for sentencing purposes because they are not predicated upon "a single criminal act." 42 Pa.C.S. § 9765. Therefore, I concur.

look at the elements as charged in the circumstances of the case"). This precedent appears to allow the Commonwealth to craft its charging documents in a manner that would expose criminal defendants to the maximum amount of possible punishment. Perhaps this is part of what Chief Justice Castille alluded to in his concurring opinion in *Baldwin*, wherein he wrote that our current paradigm under section 9765 has effectively "put a draconian end to merger claims." *Baldwin*, 985 A.2d at 839 (Castille, C.J., concurring).