J-S62019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARQUISE P. WALIYYUDDIN, | |
| Appellant | No. 2883 EDA 2013 |

Appeal from the Judgment of Sentence of May 24, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008582-2011

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                **FILED NOVEMBER 25, 2014**

Appellant, Marquise P. Waliyyuddin, appeals from the judgment of sentence entered on May 24, 2013, as made final by the denial of his post-sentence motion on September 16, 2013.  We affirm Appellant's conviction, but vacate his judgment of sentence and remand solely for resentencing.

The trial court accurately summarized the factual background of this case as follows:

> On the evening of Saturday, May 14, 2011, [Appellant] was at the apartment of his friend, Katrina Rodriguez [("Rodriguez")], who was the mother of [Aiden Santiago ("Santiago")[1]], a healthy three-month-old baby boy.  [Appellant] was the godfather of [Santiago], and had babysat for him on several occasions without incident.  Also present was [Appellant]'s boyfriend, Luis Torres [("Torres")].  At around 11:00 p.m., [Appellant] told Rodriguez that he wanted to keep [Santiago] for an overnight

---

[1] Although Santiago was a minor at the time of the incident, it is not necessary for us to protect his identity by using his initials as he is deceased.

stay. Rodriguez agreed that [Appellant] could take [Santiago] to the apartment that [Appellant] shared with Torres until the next day. [Appellant] and Torres left with [Santiago], who was alert and without any observable problems at the time.

Sometime during the afternoon of the next day, Torres left [Appellant] and [Santiago] to visit Torres' mother for dinner. During dinner, Torres received a frantic call from [Appellant], who told Torres that [Santiago] was not breathing. Torres, his brother, and his aunt left the house and rushed to [Appellant]'s apartment. When they arrived and saw [Santiago], Torres'[] aunt called 911.

Paramedics arrived at the apartment at approximately 7:30 p.m. [Santiago] was taken to St. Christopher's Hospital, where, despite emergency cranial surgery, he died at 11:55 p.m. The autopsy of [Santiago] revealed subarachnoid and subdural hematomas, and optic-nerve hemorrhages, all consistent with vigorous shaking of the baby's head. The medical examiner requested a consult from a pediatric neuropathologist, who concluded that [Santiago] died from abusive head trauma.

[Appellant] gave a statement to police on May 16, 2011. In that statement, he admitted to getting frustrated when [Santiago] awoke during the night crying, and that he "was rocking him harder, and was shaking him, just trying to get him to stop crying." He further admitted putting [Santiago] into his car seat and "rocking the car seat back and forth pretty hard" causing [Santiago] to bounce back and forth in the seat. [Appellant] stated that he "could hear [Santiago's] head bouncing back on the back of the car seat." According to [Appellant], this eventually caused [Santiago] to stop crying.

Trial Court Opinion, 1/6/14, at 2-3 (internal citations omitted).

- 2 -

The procedural history of this case is as follows. On May 17, 2011, Appellant was charged via criminal complaint[2] with third-degree murder[3] and endangering the welfare of a child.[4] On August 2, 2011, a criminal information charging third-degree murder, endangering the welfare of a child, and involuntary manslaughter[5] was filed. After a three-day bench trial, on March 22, 2013, Appellant was found guilty of endangering the welfare of a child and involuntary manslaughter. On May 24, 2013, Appellant was sentenced to an aggregate term of 5 to 10 years' imprisonment,[6] which included consecutive sentences for the involuntary manslaughter and endangering the welfare of a child convictions. On May 31, 2013, Appellant filed a post-sentence motion. The trial court denied

---

[2] We have carefully reviewed the certified record. The docket in this matter reflects that the criminal complaint charged Appellant with third-degree murder, endangering the welfare of a child, and involuntary manslaughter. Review of the criminal complaint, however, shows that Appellant was not charged with involuntary manslaughter at that stage in the proceedings.

[3] 18 Pa.C.S.A. § 2502(c).

[4] 18 Pa.C.S.A. § 4304(a)(1).

[5] 18 Pa.C.S.A. § 2504(a).

[6] Appellant incorrectly avers in his brief that he was sentenced to two to four years' imprisonment for endangering the welfare of a child. *See* Appellant's Brief at 5. He was, however, only sentenced to one to two years' imprisonment for that conviction. *See* N.T. 5/24/13, at 37-38.

Appellant's post-sentence motion on September 16, 2013. This timely appeal followed.[7]

Appellant raises two issues for our review:

1. Did [] the trial court err in imposing an illegal sentence as the offense of involuntary manslaughter merges with the offense of endangering the welfare of a child?

2. Did [] the trial court err in sentencing Appellant beyond the aggravated range of the [s]entencing [g]uidelines based on an improper factor, that is, the age of the victim, which the [g]uidelines already contemplate and provide for in the grading of the crime and in the offense gravity score?

Appellant's Brief at 4.[8]

Appellant first contends that his sentence was illegal because the involuntary manslaughter and endangering the welfare of a child convictions should have merged for sentencing purposes. Whether Appellant's "convictions merge for the purposes of sentencing is a question implicating the legality of his sentence. Consequently, our standard of review is *de novo* and the scope of our review is plenary." **Commonwealth v. Raven**, 97 A.3d 1244, 1248 (Pa. Super. 2014) (citation and footnote omitted).

_____

[7] On October 15, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On November 5, 2013, Appellant filed his concise statement. On January 6, 2014, the trial court issued its Rule 1925(a) opinion. Appellant's concise statement focused exclusively upon a challenge to the discretionary aspects of his sentence. A challenge to the legality of a sentence, however, can never be waived, even by the omission of such a claim from a concise statement. **See Commonwealth v. Seskey**, 86 A.3d 237, 241 (Pa. Super. 2014), *appeal denied*, 245 WAL 2014 (Pa. Sept. 30, 2014).

[8] We have re-numbered the issues for ease of disposition.

Section 9765 of the Sentencing Code provides that:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. This Court has explained that Section 9765 "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **_Commonwealth v. Kimmel_**, 2014 WL 4258819, *10 (Pa. Super. Aug. 29, 2014) (internal quotation marks and citation omitted).

As this Court has explained:

The threshold question is whether Appellant committed one solitary criminal act. The answer to this question does not turn on whether there was a break in the chain of criminal activity. Rather, the answer turns on whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime. If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from receiving a volume discount on crime[.]

**_Commonwealth v. Ousley_**, 21 A.3d 1238, 1243 (Pa. Super. 2011), _appeal denied_, 30 A.3d 487 (Pa. 2011) (internal quotation marks, alteration, and citation omitted).

Appellant and the Commonwealth both cite this Court's recent decision in **_Commonwealth v. Jenkins_**, 96 A.3d 1055 (Pa. Super. 2014), to support their respective positions. In **_Jenkins_**, relying upon our Supreme Court's

decisions in **Commonwealth v. Weakland**, 555 A.2d 1228 (Pa. 1989), **Commonwealth v. Anderson**, 650 A.2d 20 (Pa. 1994), and **Commonwealth v. Comer**, 716 A.2d 593 (Pa. 1998), this Court held that we must examine the charging documents when determining if two convictions arose from a single criminal act. **Jenkins**, 96 A.3d at 1060. Specifically, this Court held that, "We must determine whether [the defendant's] actions . . . constituted a single criminal act, with reference to elements of the crime **as charged by the Commonwealth**." **Id.** (emphasis added; internal quotation marks and citation omitted).

In **Jenkins**, the defendant was charged with robbery and simple assault. **Id.** at 1056. In the criminal information, the Commonwealth alleged that Jenkins committed robbery because he "assaulted [the victim] by punching him in the face causing a facial laceration and fractured jaw. [The victim] was forced to the ground, restrained and searched for personal belongings, which were stolen from [the victim]." **Jenkins**, 96 A.3d at 1061 (emphasis removed; citation omitted). On the other hand, the Commonwealth alleged that Jenkins committed simple assault because "during the course of a robbery, [Jenkins and his codefendant] assaulted [the victim] causing a facial laceration that required stitches and a fractured left jaw." **Id.** (internal alterations and citation omitted).

This Court held that the criminal information clearly charged Jenkins with simple assault and robbery for distinct criminal acts. **Id.** at 1062.

Specifically, this Court held that the simple assault conviction was charged for the punch to the face. *Id.* The criminal information, however, charged separately that Jenkins inflicted bodily injury upon the victim (an element of robbery) by forcing him to the ground and restraining him. *Id.* As the criminal information charged Jenkins with simple assault and robbery for distinct criminal acts, this Court held that the two crimes did not merge for the purposes of sentencing. *Id.* This Court noted, however, that "Had the Commonwealth listed only the assaultive conduct that formed the basis of the simple assault charge against Jenkins at the robbery charge, we would conclude that Jenkins did not commit multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime." *Id.* (internal quotation marks and citation omitted).

Applying this interpretation to the facts of this case, we conclude that the Commonwealth only alleged the reckless conduct that formed the basis of the endangering charge as its factual basis for the involuntary manslaughter charge. Specifically, the criminal information charged as follows with respect to the endangering the welfare of a child charge: "Being a parent, guardian, or other person supervising the welfare of a child under 17 years of age, [Appellant] knowingly endangered the welfare of the child by violating a duty of care, protection, or support, there was a course of conduct of endangering the welfare of a child." Criminal Information, 8/2/11, at 1. As to the involuntary manslaughter charge, the criminal

- 7 -

information charged that Appellant "Caused the death of another human being as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner or the doing of a lawful act in a reckless or grossly negligent manner." ***Id.***

There is no indication in the criminal information that Appellant was being charged for two separate criminal acts. Instead, on its face the information charges Appellant with both crimes for the same unlawful act, *i.e.*, the course of conduct of shaking Santiago. This reading of the criminal information is solidified by the criminal complaint filed in this matter. The criminal complaint stated that "at/near 4553 N. 5th St. [Appellant] intentionally, knowingly, recklessly, or negligently caused the death of [] Santiago, age 3 months, his godson, by forcefully shaking the decedent [and] thereby causing the decedent to suffer subdural and subarachnoid hemorrhages which caused his death." Criminal Complaint, 5/17/11, at 1 (complete capitalization removed). Thus, the criminal complaint makes clear that Appellant was charged with both murder (and subsequently involuntary manslaughter) and child endangerment for only one criminal act, the forceful shaking of Santiago that led to his death. There is no mention of a separate incident in which Appellant shook Santiago which allegedly formed the basis for the endangerment charge.[9]

_____

[9] In its brief, the Commonwealth argues that "[t]he evidence established that, on two occasions while caring for [Santiago], [Appellant] vigorously shook [Santiago]. First by [Appellant's] own admission, in the middle of the

The Commonwealth may be correct that there was sufficient evidence to convict Appellant of endangering the welfare of a child and involuntary manslaughter based upon distinct criminal acts. The Commonwealth, however, either by choice or oversight in drafting of the criminal information in this matter, only alleged that Appellant had committed a single criminal act. *Jenkins* makes clear that the Commonwealth's *post hac* rationalization for finding separate criminal acts is unavailing. When the charging documents allege only a single criminal act, the first requirement for merger has been satisfied.

As both Appellant and the Commonwealth note, in **Commonwealth v. Barnhart** this Court held that all of the statutory elements of endangering the welfare of a child are included in the statutory elements of involuntary manslaughter. 497 A.2d 616, 629-630 (Pa. Super. 1985); **see Commonwealth v. Bird**, 597 A.2d 1169, 1172 (Pa. Super. 1991); **see also Commonwealth v. Martir**, 712 A.2d 327, 330 (Pa. Super. 1998). Therefore, the second requirement for merger is present. As Appellant's convictions for endangering the welfare of a child and involuntary manslaughter arose from a single criminal act and all of the elements of endangering the welfare of a child are included in the statutory elements of

---

night he robustly rocked [Santiago] in his arms, and then in the car seat." Commonwealth's Brief at 9. Although the evidence may arguably have established two separate actions which constituted endangering the welfare of a child, **Jenkins** requires us to examine the charging documents, not the evidence adduced at trial, to determine if two convictions arose from a single criminal act for the purpose of finding merger.

involuntary manslaughter, the two convictions should have merged for sentencing purposes. "Given that our disposition of Appellant's [merger claim] potentially disrupts the trial court's overall sentencing scheme, we remand for resentencing." **Commonwealth v. Hutchins**, 42 A.3d 302, 312 (Pa. Super. 2012), *appeal denied*, 56 A.3d 396 (Pa. 2012). As we remand for resentencing, we decline to address Appellant's challenge to the discretionary aspects of his sentence.

Judgment of sentence vacated. Case remanded solely for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014

- 10 -