J-S35002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LANCE MOORE :
:
Appellant : No. 390 MDA 2021

Appeal from the PCRA Order Entered March 5, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000805-2017

BEFORE: OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.: **FILED: DECEMBER 30, 2021**

Appellant, Lance Moore, appeals from the order entered on March 5, 2021, which dismissed his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The Commonwealth accused Appellant of sexually assaulting his 81-year-old mother, A.M. ("the Victim"). At the time of the January 13, 2017 sexual assault, Appellant was 45 years old and was living with the Victim. N.T. Trial, 7/10/18, at 86.

During Appellant's jury trial, the Victim testified that, on the night of January 13, 2017, she was sitting in her living room chair when Appellant approached her with "a tube of blue and white lubricant" in his hand. N.T. Trial, 7/10/18, at 86 and 91. She testified:

_____

[*] Retired Senior Judge assigned to the Superior Court.

He took the blanket that I was sitting on around me and he pulled that and . . . he just pulled me right down to the floor and pulled me across to where this far end is, and then he proceeded to sexually assault me.

. . .

I told him he didn't want to do this. And I begged and I pleaded with him. I was scheduled for surgery in seven days, and I hadn't been good. And I asked him not to – please not to do it. But he wouldn't listen to me.

*Id.* at 92.

She testified that Appellant pulled off her underwear and "proceeded to have his way with me . . . sexually." *Id.* at 93 (some capitalization omitted). Specifically, the Victim testified that Appellant touched her groin and her vagina with his penis. She also testified: "when I was on my stomach, I think he tried to penetrate my anus. I'm not sure, but I think he did. But I don't believe he was successful." *Id.* at 96.

The Victim testified that, the next morning:

I wrestled with how on earth I was going to get out of that house. I couldn't stay in that house. I had – I'm handicapped. I had no way to get out. So [Appellant] knew I was scheduled for surgery. He knew I was having awful trouble and I had terrible pain. And he knew I was scheduled for that coming Friday.

And so I prayed about this and I thought I got to get out of here. So I called up to him and I said, [Appellant], I need help. I said I'm having so much pain I can't wait until Friday. I've got to get out of here, and I said would you please see that I got to the hospital?

Well, this wasn't an easy thing for him to do as far as transportation. And so . . . he said he'd call an ambulance for me and I said please. So he did call the ambulance for me.

. . .

> So I wrote a note for the ambulance driver, . . . [saying] I
> have been sexually assaulted by [Appellant], my son.  Help
> me, please . . . and I stuck it in my . . . coat pocket.
>
> And they came with the ambulance and they loaded me in.
> And when I got settled, I reached over – I was face to face
> with the young gentleman, and I reached over and I handed
> him this note. And he said – he read it and he looked amazed.
> And he took ahold of my arm and he said nobody else is going
> to hurt you.  We'll get you help.

*Id.* at 98-99 and 101.

The Victim was subjected to a forensic examination at the hospital.

During the examination, the Victim told the forensic nurse:

> [Appellant] pulled my legs up and apart so he could penetrate
> me.  . . . [H]e didn't go in all the way, he tried to but I yelled
> out and . . . he stopped when he heard me yell, and he rubbed
> himself on me.
>
> . . .
>
> Afterwards, I felt it running down my leg.  He tried to go in
> my rectum, but I begged him.  I said[, Appellant,] I'm not
> that kind of person and he didn't.

*Id.* at 133-134.

The jury found Appellant guilty of indecent assault and criminal attempt to commit involuntary deviate sexual intercourse ("IDSI").[1, 2]  On October 2, 2018, the trial court sentenced Appellant to serve a term of 21 to 42 months

---

[1] 18 Pa.C.S.A. §§ 3126(a)(2) and 901(a), respectively.

[2] The jury found Appellant not guilty of rape, sexual assault, and incest.  N.T. Trial, 7/11/18, at 265.

- 3 -

in prison for his indecent assault conviction and to serve a consecutive term of 102 to 204 months in prison for his criminal attempt to commit IDSI conviction, for an aggregate term of 123 to 246 months in prison. N.T. Sentencing, 10/2/18, at 48-49. We affirmed Appellant's judgment of sentence on May 19, 2020. **Commonwealth v. Moore**, 237 A.3d 463 (Pa. Super. 2020) (unpublished memorandum) at 1-20.

Appellant filed a timely, *pro se*, PCRA petition on July 6, 2020. The PCRA court appointed counsel to represent Appellant during the proceedings and counsel filed an amended petition on Appellant's behalf. Within the amended petition, Appellant claimed that his sentence is illegal because "the sentences for his convictions of indecent assault and attempted [IDSI] were not merged." Amended PCRA Petition, 11/17/20, at 1 (some capitalization omitted).

On January 28, 2021, the PCRA court provided Appellant notice that it intended to dismiss his petition in 20 days, without holding a hearing. PCRA Court Notice, 1/28/21, at 1; **see also** Pa.R.Crim.P. 907(1). The PCRA court finally dismissed Appellant's petition on March 4, 2021 and Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

> Was [Appellant's] sentence, which failed to merge for sentencing purposes [Appellant's convictions for indecent assault and attempted IDSI,] illegal in light of **Commonwealth v. Tighe**, [184 A.3d 560 (Pa. Super. 2018)], which states that proof of [IDSI] necessarily proves indecent assault? And therefore the convictions merge for sentencing purposes?

- 4 -

Appellant's Brief at 4.

"We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." ***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017) (citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is "[t]he imposition of a sentence greater than the lawful maximum." 42 Pa.C.S.A. § 9543(1)(vii); ***see also*** 42 Pa.C.S.A. § 9542 (declaring that the PCRA "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief").

"Whether Appellant's convictions merge for sentencing is a question implicating the legality of Appellant's sentence. Consequently, our standard of review is *de novo* and the scope of our review is plenary." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009).

Pennsylvania's merger doctrine is codified at 42 Pa.C.S.A. § 9765. This statute provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for

> sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

As our Supreme Court has explained, the "mandate of [Section 9765] is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Baldwin**, 985 A.2d at 833.

Appellant was convicted of indecent assault and criminal attempt to commit IDSI. As is relevant here, indecent assault is defined as:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> . . .
>
> (2) the person does so by forcible compulsion.

18 Pa.C.S.A. § 3126(a)(2). The Crimes Code defines "indecent contact" as: "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

Appellant was also convicted of attempted IDSI. In relevant part, IDSI is defined as:

> A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

(1) by forcible compulsion.

18 Pa.C.S.A. § 3123(a)(1). "Deviate sexual intercourse" is defined, *inter alia*, as "[s]exual intercourse per os or per anus between human beings." 18 Pa.C.S.A. § 3101. Further, Section 901(a) of the Crimes Code declares: "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

As Appellant correctly observes, in ***Commonwealth v. Tighe***, 184 A.3d 560 (Pa. Super. 2018), this Court held that Defendant Tighe's conviction for indecent assault merged with his conviction for IDSI. ***See*** Appellant's Brief at 13; ***Tighe***, 184 A.3d at 585. In ***Tighe***, Defendant Tighe was convicted of a number of crimes, including rape, IDSI, and indecent assault. The crimes occurred when the defendant "inserted his penis into [the minor victim's] mouth and vagina," in an "incident [that] lasted about [five] minutes." ***Tighe***, 184 A.3d at 564. Defendant Tighe raised a number of claims on appeal, including a claim that his sentence was illegal, as his indecent assault conviction merged with his rape conviction. ***See id.*** at 565.

The Commonwealth agreed that Defendant Tighe's indecent assault conviction "probably" merged with his rape conviction for sentencing purposes. ***See id.*** at 583, *quoting* Commonwealth's Brief in ***Tighe***, at 59. Regarding the merger doctrine's "single criminal act" requirement, the Commonwealth's appellate brief in ***Tighe*** declared:

In the present case, [Defendant Tighe] was charged with and convicted of rape (by threat of force) when he "vaginally penetrated the victim." (See Information, 12-CR-1297). He was charged with and convicted of indecent assault (person less than 16 years of age) when he "did have sexual intercourse with the victim." ***Id.*** It appears, therefore, that [Defendant Tighe] was found guilty of rape and indecent assault based upon "a single physical act." Furthermore, the act of rape involves engaging in sexual intercourse with a victim (18 Pa.C.S. § 3121(a)), while the act of indecent assault involves having indecent contact with the victim, or causing the person to have indecent contact with the perpetrator, for the purpose of arousing sexual desire in one of them (18 Pa.C.S. § 3126(a)). The act of having sexual intercourse appears to satisfy the elements of both. Therefore, [Defendant Tighe] is probably correct that the crimes should have merged for sentencing purposes.

Commonwealth's Brief in ***Tighe***, at 58-59 (some capitalization omitted).

Further, on this claim, the trial court in ***Tighe*** "concede[d] error and acknowledge[d] that [Defendant Tighe's] sentence on the indecent assault count should have merged with the rape count because the Commonwealth alleged the same underlying criminal activity for both the indecent assault and the rape counts." ***See*** Trial Court Opinion, 4/10/17, at 40.

On appeal, this Court held that Defendant Tighe waived his claim that his indecent assault conviction merged with his rape conviction. Specifically, this Court explained:

The trial court opined that [indecent assault and rape] merge due to the fact that "the act upon which indecent assault is predicated has already been taken into account by the rape or involuntary sexual assault and merges." Trial Court Opinion, 4/10/17, at 40. As to that facet of the merger analysis, we agree. ***See Commonwealth v. Lomax***, 8 A.3d 1264 (Pa. Super. 2010) (engaging in vaginal intercourse with child met requirement of sexual intercourse for rape of a child as well as "indecent contact" for indecent assault). However,

- 8 -

the trial court's inquiry was incomplete, as that analysis only accounted for whether "the crimes arise from a single criminal act." 42 Pa.C.S. § 9765. [Defendant Tighe] did not address whether the second requirement, that "all of the statutory elements of one offense are included in the statutory elements of the other offense," was met. Therefore, we conclude that [Defendant Tighe's] argument is waived.

*Tighe*, 184 A.3d at 584 (corrections omitted).

Nevertheless, this Court *sua sponte* raised the issue of whether Defendant Tighe's indecent assault conviction merged with his IDSI conviction. We examined the statutes and held that the crimes merged for sentencing purposes because "proof of involuntary deviate sexual intercourse with a person under [16 years of age] necessarily proved indecent assault of a person under [16]." *Id.* at 585.

In the current appeal, Appellant argues that *Tighe* is controlling and necessitates that his indecent assault conviction merge with his attempted IDSI conviction for sentencing purposes. As to the merger doctrine's "single criminal act" requirement, Appellant admits that his own "convict[ions for] criminal attempt – IDSI and indecent assault [were] based on [his] attempts to penetrate two (2) different orifices during the same incident of sexual assault." Appellant's Brief at 20. Nevertheless, Appellant declares that, in *Tighe*, the general factual recitation declared that Defendant Tighe had "inserted his penis into [the minor victim's] mouth and vagina." *Tighe*, 184 A.3d at 563; Appellant's Brief at 12. According to Appellant, since the *Tighe* Court held that the IDSI and indecent assault convictions merged, the *Tighe*

Court must have held that the merger doctrine's "single criminal act" requirement is satisfied where a defendant commits "two (2) different acts of penetration in the same assault." Appellant's Brief at 20.

At the outset, we reject Appellant's interpretation of *Tighe*. After the *Tighe* Court *sua sponte* raised the issue of whether the indecent assault and IDSI convictions merged for sentencing purposes, the *Tighe* Court merely held that merger was required because "all of the statutory elements of [indecent assault] are included in the statutory elements of [IDSI]." *See Tighe*, 184 A.3d at 585. Importantly, the *Tighe* Court did not engage in any meaningful analysis as to whether Defendant Tighe's indecent assault and IDSI convictions arose from a "single criminal act." *See* 42 Pa.C.S.A. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act . . ."). Certainly, to the extent the *Tighe* Court referenced the merger doctrine's statutory requirement that the crimes arise from a "single criminal act," the Court apparently relied upon its earlier analysis and conclusion that **a single act of vaginal penetration** was the predicate for both the **rape** and **indecent assault** convictions. *See Tighe*, 184 A.3d at 584-585. The Court simply did not independently analyze whether Defendant Tighe's **indecent assault** and **IDSI** convictions arose from a "single criminal act." *See id.*

Thus, and contrary to Appellant's claim on appeal, the *Tighe* Court **never held** that "two (2) different acts of penetration in the same sexual assault" constitute a "single criminal act" for merger purposes. *See*

- 10 -

Appellant's Brief at 20. There was simply no discussion on the subject – and Appellant's attempt to extrapolate **Tighe's** general facts to his desired outcome thus fails.

Further, under our precedent, it is clear that Appellant committed two "distinct criminal acts" when he touched the Victim's vagina with his penis and then attempted to anally penetrate her. As we have explained:

> Our Courts have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply. . . . When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a "break in the chain" of criminal activity. Th[e] issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

**Commonwealth v. Pettersen**, 49 A.3d 903, 911-912 (Pa. Super. 2012) (citations and some quotation marks omitted). Additionally, in **Commonwealth v. Jenkins**, 96 A.3d 1055, 1062 (Pa. Super. 2014), this Court held that, to "determine whether [the defendant's] actions . . . constitute[] a 'single criminal act,'" we must refer to the "elements of the crime[s] as charged by the Commonwealth" in the information. **See Jenkins**, 96 A.3d at 1060.

In the case at bar, Appellant touched the Victim's vagina with his penis – thus committing the crime of indecent assault.[3]  Appellant then attempted to penetrate the victim's anus with his penis – thus committing the crime of attempted IDSI.[4]  These "multiple criminal acts" went "beyond that which [were] necessary to establish the bare elements of" each individual crime and, therefore, Appellant was properly sentenced for both indecent assault and attempted IDSI.  Appellant's claim on appeal thus fails.  **See also Commonwealth v. Ousley**, 21 A.3d 1238, 1243 (Pa. Super. 2011) ("[T]he evidence does not support [the appellant's] contention that there was a single act that formed the basis for these charges, that is, a single blow to the head. The record reflects that the victim was struck in the head with a firearm being

_____

[3] The Commonwealth's information charged Appellant with indecent assault by claiming:

> [Appellant] had indecent contact with [the Victim] or caused [the Victim] to have indecent contact with [Appellant] by forcible compulsion.

Amended Information, 7/9/18, at 1.

[4] The Commonwealth's information charged Appellant with attempted IDSI by claiming:

> [Appellant] committed an attempt when, with intent to commit the crime of [IDSI] by forcible compulsion, [Appellant] did the act of attempting to penetrate [the Victim] anally with his penis, which constituted a substantial step toward the commission of the aforesaid crime.

Amended Information, 7/9/18, at 2 (some capitalization omitted).

carried by [the appellant] that resulted in a bleeding head wound. This was clearly an attempt to cause serious bodily injury. In addition, the evidence reflects that [the appellant], while brandishing the firearm and after striking her on the head, forced her into an office, demanded to know where the company safe was and threatened to shoot her if she did not tell him the truth. This was not a single act that formed the basis for both charges"); *Jenkins*, 96 A.3d at 1062 ("Jenkins' crimes were the result of multiple criminal acts. The information filed by the Commonwealth enumerates that the element of simple assault . . . was fulfilled when the Defendants punched Caracillo, and knocked him to the ground. . . . The charge of robbery against Jenkins also contains a description of this initial assault. . . . However, the Commonwealth's description of the conduct forming the basis of the robbery charge against Jenkins also included the Defendants' conduct in restraining Caracillo on the ground. Caracillo's testimony indicates that the Defendants restrained him by holding a foot to his head in a manner that exacerbated his existent facial injuries. This additional physical restraint caused Caracillo substantial pain. These events would establish the 'bodily injury' element of robbery, even in the absence of the facts that established Jenkins' conviction for simple assault. By including the restraint of Caracillo in its description of robbery, the Commonwealth established that Jenkins committed multiple criminal acts beyond the 'bare' standard") (citations and footnote omitted); *see also Pettersen*, 49 A.3d at 912 ("[a]ppellant is not entitled to a volume

discount for [his] crimes simply because he managed to accomplish all the acts within a relatively short period of time").

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2021