J.S36043/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL PIPER, | : | |
| | : | |
| Appellant | : | No. 3218 EDA 2013 |

Appeal from the Judgment of Sentence August 1, 2013
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0003958-2011

BEFORE: GANTMAN, P.J., JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JANUARY 20, 2015**

Appellant, Michael Piper, appeals from the judgment of sentence[1] entered in the Northampton County Court of Common Pleas following a jury trial. Appellant was found guilty of rape by forcible compulsion,[2] statutory sexual assault,[3] sexual assault,[4] indecent assault of a person less than 13

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purported to appeal from the denial of post-sentence motions. "[A] direct appeal in a criminal proceeding lies from the judgment of sentence." **Commonwealth v. W.H.M., Jr.**, 932 A.2d 155, 158 n.1 (Pa. Super. 2007). Accordingly, we have amended the caption.

[2] 18 Pa.C.S. § 3121(a)(1).

[3] 18 Pa.C.S. § 3122.1.

years of age,[5] endangering the welfare of children,[6] corruption of minors,[7] and incest[8] for the sexual abuse of his minor daughter ("Victim").  Appellant contends the court erred in (1) admitting certain testimony, (2) seating two jurors, (3) instructing the jury he admitted to sexually assaulting his stepdaughter, (4) not merging sentences and (5) imposing consecutive, aggravated-range sentences.  We affirm.

On March 24, 2011, Victim, who was seventeen years old at that time, was interviewed by police and reported that Appellant sexually abused her when she was between twelve and fourteen years old.  On October 26, 2011, the Commonwealth filed a criminal complaint alleging Appellant abused Victim on numerous occasions when she stayed in Appellant's home and charging him with the above-stated offenses.

The trial court summarized the remaining procedural history of this case in its October 17, 2013 memorandum and order denying Appellant's post-sentence motions:

> On June 4, 2012, [Appellant] was found guilty on all charges.  The [c]ourt ordered a presentence investigatory

---

[4] 18 Pa.C.S. § 3124.1.

[5] 18 Pa.C.S. § 3126(a)(7).

[6] 18 Pa.C.S. § 4304(a).

[7] 18 Pa.C.S. § 6301(a)(1).

[8] 18 Pa.C.S. § 4302.

report, a psychosexual evaluation of [Appellant] and a sexual offender assessment to be conducted by the Pennsylvania Sexual Offender Assessment Board.

\* \* \*

[On August 1, 2013, u]pon consideration of the evidence adduced at [a sexually violent predator ("SVP")] hearing, the [c]ourt found [Appellant] to be a [SVP] as defined by statute. Upon the conclusion of the SVP hearing, the [c]ourt proceeded to the sentencing hearing. On sentencing, the Commonwealth presented [Appellant's] former wife [Victim's] mother, [("Mother")], who read a letter prepared by [Appellant's] step-daughter, [Sister[9]] who testified against him at trial. . . . The [c]ourt made each sentence consecutive . . . for an aggregate term of 351-702 months with credit for time served. Having sentenced [Appellant] in the aggravated range on all charges, the [c]ourt noted on the record the factors leading to that decision, inclusive of the fact that: [Victim] was placed in his care and trust by virtue of his parental relationship with her; the vulnerability of [Victim] due to her youth; the fact that [Appellant] was a repeat criminal offender; the fact of his multiple convictions in connection with the alleged abuse of the child; and the apparent lack of remorse for his crimes.

Trial Ct. Op., 10/17/13, at 1, 3-4 (citations to record omitted).

Appellant filed post-sentence motions which were denied. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court incorporated its October 17th memorandum and order as its Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues for our review:

---

[9] Appellant's counsel initially objected to the reading of Sister's letter, but withdrew his objection. N.T., 6/6/12, at 220-21.

[1.] Whether the trial court erred in admitting or failing to exclude the testimony of witness [A.M. ("Friend")] and witness [Sister] because the testimony was irrelevant and, alternatively, its probative value did not outweigh its prejudicial effect?

[2.] Whether the trial court erred by erroneously instructing the jury that [Appellant] "admitted to sexually assaulting his stepdaughter" [Sister] and failing to give a proper corrective instruction?

[3.] Whether the trial court erred in seating jurors 16 and 21 and did not [sic] granting a new trial on these grounds?

[4.] Whether the trial court erred in not merging the sentences for rape and sexual assault and by not merging the sentences for statutory assault and indecent assault?

[5.] Whether the trial court erred by imposing aggravated range consecutive sentences which, when aggregated, resulted in a manifestly excessive and unjust sentence?

Appellant's Brief at 7.[10]

Appellant first contends the trial court erred in overruling his objections to the "prior bad acts" testimony presented by the Commonwealth. By way of background, the Commonwealth called Sister[11]

---

[10] For ease of disposition, we have reordered the questions presented.

[11] As a prefatory matter, we consider the Commonwealth's claim that Appellant has waived any challenge to the testimony of [Sister] because at trial Appellant did not object to her testimony. Instantly, Appellant filed a motion *in limine* to exclude testimony of his prior bad acts including statements by [Sister] and [Friend]. Therefore, we decline to find the issue as to the admissibility of [Sister's] testimony waived. **See Commonwealth v. Stokes**, 78 A.3d 644, 652 (Pa. Super. 2013), *appeal denied*, 89 A.3d 661 (Pa. 2014); Pa.R.E. 103.

and Friend to testify at trial. He contends the testimony of these two witnesses "did little more than to suggest a criminal propensity for the crimes with which he was charged and w[as] not admissible for any of the recognized exceptions." *Id.* at 14. Appellant avers that the testimony of the two witnesses "should have been excluded because it did not make a fact of consequence to the trial more or less probable and was highly prejudicial." *Id.* He contends the testimony of Friend, specifically, that she "felt 'uncomfortable', how [Appellant] wanted to hold her hand, and asked her about her virginity[,]" had no proper evidentiary purpose. *Id.* Appellant claims "[t]he use of evidence produced by these two witnesses was designed to do nothing more than increase the jury's aversion to [him], to increase the 'ick' or 'creepiness' factor as it were or to show that [he] has a propensity to commit crimes . . . ." *Id.* at. 15. We hold no relief is due.

This Court has stated:

> Rulings on the admissibility of evidence are within the discretion of the trial judge, and such rulings form no basis for a grant of appellate relief absent an abuse of discretion. While it is true that **evidence of prior crimes and bad acts** is generally inadmissible if offered for the sole purpose of demonstrating the defendant's bad character or criminal propensity, the same evidence **may be admissible where relevant for another purpose**. Examples of other such relevant purposes include showing the defendant's motive in committing the crime on trial, the absence of mistake or accident, a common scheme or design, or to establish identity. . . . **[T]he evidence may also be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.** Of course, in addition to the relevance requirement, any

ruling on the admissibility of evidence is subject to the probative value/prejudicial effect balancing that attends all evidentiary rulings.

***Commonwealth v. Green***, 76 A.3d 575, 583 (Pa. Super. 2013) (citation omitted and emphases added), *appeal denied*, 87 A.3d 318 (Pa. 2014).

The Pennsylvania Rules of Evidence[12] define relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. "All relevant evidence is admissible[.]" Pa.R.E. 402. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403. Rule 404 provides: "Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2).

> The inquiry into admissibility of "other crimes" evidence does not end with confirming a permissible 404(b) purpose such as proving identity, but proceeds to ask whether the probative value of the "other crimes" evidence outweighs its presumptive prejudice. In conducting the probative value/prejudice balancing test, courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time

---

[12] We note the rules were amended January 17, 2013, subsequent to the trial in this case.

lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility."

*Commonwealth v. Weakley*, 972 A.2d 1182, 1191 (Pa. Super. 2009)

(citations omitted).

In the case *sub judice*, the trial court opined:

[T]he Commonwealth urges that [Sister's] testimony was properly admitted to corroborate certain items of the victim's testimony to show a common scheme or plan, and to show absence of mistake. As to [Friend's] testimony, they argue it was properly admitted to explain the chain of events leading to [Victim's] reporting of the crimes against her. . . .

Finally, the Commonwealth suggests that any perceived prejudice to [Appellant] was mitigated by the [c]ourt's issuance of a limiting instruction to the jury, advising them that the subject evidence was admitted for their consideration for the sole purpose of explaining how the victim came to report the crimes against her and how the investigation proceeded. Further the jury was instructed that they could not consider such evidence to conclude that [Appellant] was a bad person with criminal tendencies. On those facts, the Commonwealth asserts that [Appellant's] contention as to the prejudicial effect of the challenged evidence is of no merit. The [c]ourt agrees.

While the challenged evidence was not flattering to [Appellant], it was, as the [c]ourt determined in its pretrial ruling, most certainly relevant, admissible and probative for the express purpose of establishing the chain of events and demonstrating a common scheme. In weighing the probative value of the evidence against any prejudice arising therefrom pursuant to the factors enumerated in *Weakeley*, the [c]ourt notes that (1) the acts to which [Sister] and [Friend] testified were in close temporal proximity to the crimes against the victim, (2) there were a great number of similarities in the testimony of [Sister]

and that of [Victim] as to their individual experiences with [Appellant], and (3) [Sister's] testimony corroborated certain statement by [Victim]. Moreover, the [c]ourt finds it highly unlikely that the testimony of [Sister] and [Friend] caused the jury any more hostility toward [Appellant] than did the testimony of [Victim] herself.

Trial Ct. Op. at 8-9 (citations to the record omitted). We agree no relief is due.

At trial, Sister[13] testified, *inter alia*, as follows:

[The Commonwealth]: How do you know [Appellant]?

A: He was my adopted father.

* * *

Q: Did at some point in time your mom and dad divorce?

A: Yes.

Q: And did you go and visit your—with your father?

A: Yes, every weekend.

* * *

Q: What were the sleeping arrangements?

A: . . . [W]herever me and [Victim] would sleep, [Appellant] would choose who would sleep with him and who would sleep in the other room.

* * *

Q: And during the times when he chose to sleep with you, did he ever do anything that made you feel uncomfortable?

A: Yes.

---

[13] She was nineteen at the time of trial. N.T., 6/5/12, at 209.

* * *

Q: And what did he do that made you feel uncomfortable?

A: He got on top of me.

* * *

Q: And what happened after he got on top of you?

A: He was moving around, like, his waist and all.

* * *

Q: . . . Where was it moving?

A: On me.

Q: . . . What part of you?

A: My bottom half.

* * *

Q: Do you recall what you did when he got on top of you and was moving in that way?

A: I tried to push him off, but he wouldn't get off.  Maybe about 10, 15 minutes later he did.

N.T., 6/5/12, at 210, 211, 212, 213.

Sister further testified that one weekend Friend came to Appellant's house with her.  *Id.* at 216.  She did not witness anything inappropriate transpire between Friend and Appellant.  However, Appellant's girlfriend, Carrie Cook, was at the house and told her that Appellant took Friend "places with him and [held] her hand and asked her if she was a virgin . . ."  *Id.*

At trial, Sister read a note she had written to a friend, identified only as Kristen, in which she stated: "My dad's going to jail for trying to rape my sister [,Victim,] and me. Then he was always with [Friend] holding her hand and stuff. He probably would have done something to her, too." *Id.* at 215, 221.

Friend[14] testified she slept once at Appellant's house when she was fourteen years old. N.T., 6/6/12, at 251.

> [The Commonwealth]: During the time when you slept over his house, did he do anything that made you feel uncomfortable?
>
> A: He always wanted to hold my hand.
>
> Q: Did you hold his hand?
>
> A: Yes.
>
> Q: And were you ever alone with him?
>
> A: Yes.
>
> Q: When were you alone with him?
>
> A: He took me to the store with him once, and then when we came back, we sat in his vehicle and talked.
>
> Q: What did you talk about?
>
> A: He told me that I was a beautiful girl and that any guy would kill to have a girl like me, told me that I had a nice body, and he asked me if I was a virgin.
>
> Q: What did you say?

---

[14] She was twenty years old at the time of trial. N.T., 6/6/12, at 250.

A: I told him I was, and he told me that we would keep it that way for a while.

* * *

Q: . . . [D]id you ever hug [Appellant]?

A: Yes.

Q: And did he hug you back?

A: Yes.

Q: And did anything occur when he hugged you that made you feel uncomfortable?

A: His hand would slide down onto my butt, and he would rub it.

N.T., 6/6/12, at 251, 252, 253.

At trial, Appellant renewed his objection to Friend's testimony. *Id.* at 246. The Commonwealth responded that although her testimony was not admissible under the common scheme or plan theory, it was "admissible to explain to the jury the history and natural sequence of events . . . ." *Id.* at 247. The Commonwealth explained to the court that Victim did not report the abuse by Appellant until she learned that something happened to Friend.[15] *Id.* The trial court ruled that the testimony was admissible for the purposes as stated by the Commonwealth. *Id.* at 249.

The court gave the following instruction to the jury:

---

[15] We note the typographical error by the court reporter in attributing this argument to counsel for Appellant. N.T., 6/6/12, at 246.

You have heard evidence tending to prove [Appellant] was guilty of improper conduct for which he is not on trial. I'm speaking of testimony to the effect that [Appellant] **admitted** to sexually assaulting his stepdaughter, [Sister], and that he acted inappropriately with another minor, [Friend].

This evidence is before you for a limited purpose; that is, for the purpose of tending to show the circumstances under which [Victim] first revealed [Appellant's] alleged conduct and the circumstances under which the investigations against [him] commenced.

This evidence must not be considered by you in any other way other than for the purpose I just stated, and you must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might infer or might be inclined to infer guilt.

*Id*. at 370 (emphasis added).

At the conclusion of the court's instructions to the jury, there was a discussion at sidebar. Appellant's counsel brought it to the court's attention that it "**substituted the word admitted for attempted**" in the charge regarding evidence of other offenses as substantive proof of guilt.[16] *Id.* at 387-88 (emphasis added). Following the sidebar discussion, the court instructed the jury as follows:

I just want to reread a portion of the charge regarding evidence of other offenses as substantive proof of guilt.

You heard evidence tending to prove that [Appellant] was guilty of improper conduct for which he is not on trial. I'm speaking of the testimony to the effect that [Appellant] **attempted to sexually assault his stepdaughter**,

---

[16] We note, however, the trial court's initial cautionary instruction is the subject of a separate challenge in this appeal.

[Sister], and that he acted inappropriately with another minor, [Friend].

**This evidence is before you for a limited purpose. That is for the purpose of tending to show circumstances under which [Victim] revealed [Appellant's] alleged conduct and the circumstances under which the investigations against [him] commenced.** This evidence must not be considered by you in any way other than for the purpose I just stated. **You must not regard this evidence as showing [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.**

*Id.* at 389-90 (emphases added).

Following our review, we agree with the trial court "that to the extent [Appellant] believes he was prejudiced by the admission of the subject evidence, any prejudice was outweighed by [the] probative value, and as such, [Appellant] has failed to establish a basis for" his claim. Trial Ct. Op. at 9; *see Green*, 76 A.3d at 583-84; *Weakley*, 972 A.2d at 1191. Specifically, the court's rulings that Appellant's actions towards Victim, Sister, and Friend shared sufficient similarities to evince a common plan and absence of mistake was not unreasonable. Lastly, as discussed below, the court ultimately instructed the jury on the proper consideration of Sister's and Friend's testimony. Because we discern no abuse of discretion to upset the court's evidentiary rulings, no relief is due. *See Green*, 76 A.3d at 583.

Appellant next claims "the trial court committed reversible error when it erroneously instructed the jury that [Appellant] 'admitted to sexually assaulting his stepdaughter [Sister].'" Appellant's Brief at 18. He avers that

- 13 -

"[n]o corrective instruction was given to explain that the court misspoke."

*Id.* Appellant contends he is entitled to a new trial. *Id*. at 19.

This Court has stated:

> In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

As a prefatory matter, we consider whether Appellant has waived this claim. "Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008).

As discussed *supra*, following the charge to the jury, defense counsel brought the error to the court's attention, and the court reread the jury instruction. N.T., 6/6/12, at 389-90. The court stated: "Anything else, counsel?" *Id.* at 390. Counsel for Appellant responded: "Nothing else, Your Honor." *Id.* The jury was then discharged. *Id.* at 391.

- 14 -

After objecting and receiving a corrected instruction, Appellant failed to request a mistrial. The trial court found Appellant waived the issue based upon defense counsel's failure to ask for any further relief. Trial Ct. Op. at 12. We agree. **See Strunk**, 953 A.2d at 579.

Third, Appellant contends the trial court erred in seating juror number 16 because she "admitted that she worked with students who [were] emotionally disturbed and victims of sex crimes." Appellant's Brief at 17. He avers the court erred in seating juror number 21 because the juror knew the prosecutor. **Id.** He claims he was denied his constitutional right to an impartial jury. **Id.** Initially, we consider whether Appellant has waived this issue.

In **Commonwealth v. Wholaver**, 989 A.2d 883 (Pa. 2010), the defendant

> contend[ed] the trial court violated his right to a fair trial and impartial jury by excusing for cause a venireman who expressed conscientious or religious objections to the death penalty, without any record proof or finding this potential juror would be substantially impaired in performing his duties. Following the venireman's statement that he could not impose the death penalty under any circumstances because of his religious beliefs, **the prosecutor moved to excuse him for cause, and defense counsel did not object**—understandably, because the potential juror had just stated he would not be able to follow the law. **As no objection was posed, this issue was not preserved and is waived. See** Pa.R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for first time on appeal)[.]

**Id.** at 892 (emphases added).

- 15 -

During the *voir dire* Juror number 16 stated:

> A Juror: No. 16.  I just want the Court to know that I work with students who are emotionally disturbed who have been abused by parents sexually, physically abused, and emotionally abused.  I've been working in the school for 30 years, private school that deals with kids with emotional problems, learning disabilities.  So I just want the Court to know that.
>
> [The Commonwealth]: Do you think you can be fair?
>
> A Juror: I think I can be fair.
>
> [The Commonwealth]:  Thank you, sir, for coming forward.
>
> [Defense Counsel]: Thank you, sir.
>
> The Court: Okay?
>
> [Defense counsel]: **I don't have any questions**.
>
> The Court: Thank you, sir.

N.T., 6/4/12, at 40-41 (emphasis added).

Juror number 21 indicated that she knew the prosecutor.  *Id.* at 11-12.  The court asked defense counsel if he had any questions and he replied: "I don't have any questions except of you.  And that would be if we do have occasion to strike for cause, do we do that immediately, or do you want to do that later."  *Id.* at 14.  The court responded: "Normally we just take notes and then we'll convene after."  *Id.*

At the conclusion of the *voir dire*, the court reviewed the list of jurors as follows:

> The Court: **The challenges for cause**:  No. 1, 10, 11, 15, 20, 25, 34.

[Defense Counsel] How about 29?

The Court: I'm sorry, 29 is hardship. . . . 30 is cause, 34, 38, 41, 49.

[Defense Counsel]: Seven?

The Court: I'm sorry, 47, 49, 51, 53, that's it.

[Defense Counsel]: Okay.

The Court: So there's 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14. 14 for cause and then one hardship being No. 29. Okay? We have strikes No. 1, 10, 11, 15, 20, 25. Now 29 is a hardship. 30 is cause, 34, 38, 41, 47, 49, 51, and 53.

So by my calculation, the first 12 jurors will be selected through No. 35. Correct? And then the two alternates through—would be 36, 37, 39, and 40. **Do we all agree**?

[Defense counsel]: **Yes**.

*Id.* at 67 (emphases added).

In the case *sub judice*, the trial court opined:

In the instant case, juror number 16 admitted during *voir dire* that he worked with emotionally disturbed students and victims of sex crimes. Juror number 21 indicated that she knew the prosecutor. Both jurors were further colloquied. . . . **Defense counsel did not question either juror further, nor did he move to strike them for cause.**

\* \* \*

[**Appellant**] **raised no objection to the seating of either juror**.

Trial Ct. Op. at 10 (citations to record omitted and emphases added).

The trial court found Appellant, having failed to raise an objection during the *voir dire* to juror number 16 and juror number 21, "waive[d] the right to raise a later objection." Trial Ct. Op. at 10. We agree. Having failed to object, Appellant cannot raise the issue on appeal. **See** Pa.R.A.P. 302(a); **Wholaver**, 989 A.2d at 892.

Next, Appellant avers the trial court erred in not merging the sentences for rape and sexual assault.[17] Appellant claims "[w]here, as here, the sexual intercourse with another person was committed through the indecent contact of the defendants and victims intimate parts, these two crimes should have merged." Appellant's Brief at 21. He contends the trial court also erred by not merging the sentences for statutory assault and indecent assault. Appellant states "[a]gain, the 'indecent contact' was the sexual intercourse and therefore these crimes should have merged for sentencing purposes." **Id.**

_____

[17] We note that despite raising five issues in his brief, Appellant divides his argument section into only four parts, thus violating Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued." **See** Pa.R.A.P. 2119(a); **Commonwealth v. Briggs**, 12 A.3d 291, 343 (PA. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.") In two and one-half pages, Appellant comingled his discretionary aspect of sentencing claim with his illegal sentence claim. Appellant's Brief at 19-21. We address the legality of the sentence and the discretionary aspects of Appellant's sentence separately.

> Whether . . . convictions merge for the purposes of sentencing is a question implicating the legality of his sentence. As such, our standard of review is *de novo* and the scope of our review is plenary.
>
> Section 9765 of the Pennsylvania Sentencing Code provides as follows regarding the merger of crimes for sentencing purposes:
>
>> No crimes shall merge for sentencing purposes unless the crimes arise from **a single criminal act** and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher[-]graded offense.
>
> 42 Pa.C.S. § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. ***Id.***

***Commonwealth v. Jenkins***, 96 A.3d 1055, 1056 (Pa. Super. 2014) (some citations and footnote omitted) (emphasis added).

The trial court opined that rape and sexual assault did not merge, nor did the crimes of statutory sexual assault and indecent assault. Trial Ct. Op. at 15-16. The court reasoned: "In the instant case, the evidence in support of [Appellant's] conviction revealed that he had engaged in sexual intercourse with the victim on numerous occasions. As such, **the crimes of which he was convicted did not arise from a single criminal act**." ***Id.*** at 15. We agree.

Instantly, Appellant was charged for crimes occurring "on numerous occasions" when Victim stayed at his home. Aff. of Probable Cause,

10/26/11. At trial, Victim stated her father raped her. N.T., 6/5/12, at 150.

She testified, *inter alia*, as follows:

[The Commonwealth]: Q: Now, we're going to have to talk about the bad stuff. . . . Where did that bad stuff happen?

[Victim]: At my dad's house.

\* \* \*

Q: And who was he living with?

A: By himself.

Q: And why were you at his house?

A: Because I would go there every weekend.

Q: Did you go with anyone?

A: My brother [M. P.] and [Sister].

\* \* \*

Q: And when you went over there to visit with your brother and [Sister], what were the sleeping arrangements?

A: Sometimes I'd sleep in my room, and sometimes I'd sleep in my dad's room.

\* \* \*

Q: And could you describe the bedrooms for us?

A: Well, me and [Sister] and brother shared a room, and there was a bunk bed. And in my dad's room, there was a bed.

\* \* \*

Q: And when you went there to sleep, which of the rooms did you sleep in all the time?

A: Sometimes I'd sleep in my room.

* * *

Q: . . . Did you sometimes sleep other places?

A: Yeah.

Q: Why?

A: Because my dad made me.

Q: And where did you sleep . . . .

A: In my dad's room.

Q: You were in your dad's room. Where in that room did you sleep?

A: On the bed.

* * *

Q: Who was in the bed with you?

A: My dad.

* * *

Q: Did anything happen to your clothes?

A: They came off.

Q: Why did they—how did they come off?

A: I had to take them off.

Q: You had to take them off? Well, what clothes did you have to take off?

A: All my clothes.

Q: And why did you have to take your clothes off?

A: My dad made me.

Q: So when your clothes—when your dad made you take your clothes off, what happened then?

A: He would get on top of me.

Q: Then what happened?

A: He would rape me.

\* \* \*

Q: **How often did this happen?**

A: **Almost every weekend.**

*Id.* at 150-51, 152-54, 155 (emphasis added).

We agree with the trial court that the crimes of rape and sexual assault did not merge and the crimes of statutory sexual assault and indecent assault did not merge because Appellant's convictions did not arise from a single criminal act. *See Jenkins*, 96 A.3d at 1056.

Lastly, Appellant contends the trial court abused its discretion in imposing aggravated range consecutive sentences which, when aggregated, resulted in a manifestly excessive sentence.

This Court has stated:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. Prior to reaching the merits of a discretionary sentencing issue:
>
>> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and

903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (some citations and punctuation omitted).

Instantly, Appellant timely appealed, preserved his issue in his post sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. **See id.** Accordingly, we ascertain whether Appellant has presented a substantial question. **Id.** He avers that the sentencing court's reasons for the consecutive aggravated range sentence did not justify the sentence it imposed.

This Court has stated:

[T]here is no absolute right to appeal when challenging the discretionary aspect of a sentence. Rather, an [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code.

A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process. . . . Further, on appeal, a defendant must provide a separate statement specifying where the sentence falls in the sentencing guidelines, what provision of the sentencing code has been violated, what fundamental norm the sentence violates, and the manner in which it violates the norm.

- 23 -

* * *

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

**Commonwealth v. Dodge**, 77 A.3d 1263, 1268-69, 1270 (Pa. Super. 2013) (quotation marks, citations and footnote omitted), *appeal denie*d, 91 A.3d 161 (Pa. 2014).

In **Dodge**, the defendant contended the imposition of consecutive sentences was disproportionate to his crimes. **Id.** at 1271. This Court has "determined that such an assertion, in combination with allegations that a sentencing court did not consider the nature of the offenses or provide adequate reasons for its sentence, presents a plausible argument that the length of the sentence violates fundamental sentencing norms." **Id.** at 1271-72. Moreover, the "fail[ure] to state on the record sufficient reasons for imposing an aggravated range sentence" raises a substantial question. **Commonwealth v. Fullin**, 892 A.2d 843, 850 (Pa. Super. 2006).

We find that Appellant's Rule 2119(f) statement presents a substantial question. **See id.** Therefore, we will review the merits of Appellant's challenge to the discretionary aspects of his sentence.

Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Furthermore,

> section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S. § 9781(c). Under 42 Pa.C.S. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S. § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for

> sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 875-76 (Pa. Super. 2012) (alterations and some citations omitted).

Our Supreme Court has stated:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. **Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.** This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. . . .

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (emphasis added).

"Long standing precedent of this Court recognizes that 42 Pa.C.S.A. section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 598 (Pa. Super. 2010).

In the case *sub judice*, prior to sentencing, the court ordered a presentence investigation, a Sexual Offender's Assessment Board evaluation and a psychosexual evaluation. N.T., 6/7/12, at 418.

The trial court opined:

> In the instant case, the [c]ourt reviewed a great deal of information. The [c]ourt reviewed the results of a **presentence investigation**, which in part, detailed [Appellant's] prior criminal history. It also reviewed a psychosexual evaluation of [Appellant], indicating a high propensity to reoffend. Additionally, the [c]ourt considered facts [sic] of the case, a statement from a family member as to the impact of the crime on the victim and the family unit, the arguments of counsel and a statement by [Appellant]. Upon consideration of all the information adduced therefrom, the [c]ourt sentenced [Appellant] as set forth *supra*, finding it necessary and appropriate to sentence him in the aggravated range on each crime, and to run his sentences consecutively, in order to satisfactorily protect the public, address the rehabilitative needs of [Appellant], and to sufficiently account for the gravity of the offense and its impact on the victim and the community.

Trial Ct. Op. at 13-14.

At sentencing, the court opined:

> To the extent that the sentences I impose exceed the standard range as determined in the sentencing guidelines, the reason that those sentences will exceed the standard range are for several reasons and I will read those into the record. First, as it's well known, the victim in this case was in your care and trust.
>
> Secondly, the victim was particularly vulnerable due to her youth. As your record indicates, you're a repeat criminal. And in this instance there are multiple current convictions. And finally, while you've expressed sorrow to the family today for putting them through this, you've shown no remorse for the victim of this crime, and I

believe only someone with a depraved heart and deranged mind would take that position given what's happened to this young lady, the scars she will carry with her for the rest of her life.

In terms of sentence, and as I indicated, the aggravated reasons which I've just placed on the record apply to any sentence I've imposed that is beyond the standard range.

N.T., 8/1/13, at 53-54.

Accordingly, after examining the record as a whole, we find that the trial court's sentence was not manifestly excessive. *See Devers*, 546 A.2d at 18; *Gonzalez-Dejusus*, 994 A.2d at 598. We discern no abuse of discretion. *See Bricker*, 41 A.3d at 875-76.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2015

- 28 -