J-S71026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ROBERT E. SICKLE | |
| Appellant | No. 3326 EDA 2015 |

Appeal from the Judgment of Sentence July 9, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000475-2014

BEFORE:  BOWES, J., PANELLA, J., and FITZGERALD, J. [*]

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 06, 2016**

Appellant, Robert E. Sickle, appeals from the judgment of sentence entered on July 9, 2015, in the court of Common Pleas of Montgomery County. Sickle contends that the weight of the evidence presented by the Commonwealth does not support his convictions and questions the propriety of his sentences. We affirm the convictions, but reverse Sickle's judgment of sentence for terroristic threats, as we find that the sentence for that conviction should have merged with the robbery sentence.

The relevant facts and procedural history are as follows. On January 7, 2014, Sickle was arrested and charged with robbery and related offenses. Sickle proceeded to a jury trial. At trial, the Commonwealth presented the

---

[*] Former Justice specially assigned to the Superior Court.

following evidence. Tiffany Hernandez testified that on December 4, 2012, she was working the night shift at the Giant Food Store in Whitpain Township, Montgomery County, Pennsylvania. At approximately 11:30 p.m., Hernandez observed a thin, Caucasian man wearing blue jeans, a blue hooded sweatshirt, sunglasses, and white tape concealing part of his face enter the store. The man approached Hernandez and demanded that she open a register for him. The man revealed a bomb strapped to his mid-section and threated to "blow the place up" if Hernandez did not comply with his demands. Hernandez opened the cash drawer, placed the till on the counter, and observed the man remove two fifty-dollar bills and a number of ten-dollar bills from the till and exit the store. Hernandez immediately informed her manager, the police were alerted to the theft, and the surveillance video was pulled from the surveillance cameras. Hernandez testified that due to the sunglasses and white tape, she was unable to positively identify the suspect, but believed that he was in his late thirties and approximately five foot seven inches tall.

Next, the Commonwealth presented the testimony of Officer Eric Ponzaq. Officer Ponzaq testified that he and his K-9 partner were called to the Giant Food Store immediately following the robbery. Officer Ponzaq and the K-9 attempted to track the suspect, but were unable to locate him. However, the K-9 alerted Officer Ponzaq to the presence of the believed incendiary device. Upon further examination, the police determined that the device was not an actual incendiary device, but rather a plastic device

wrapped in tape and wires. Hernandez positively identified the plastic device as the device the man displayed to her in the Giant Food Store.

The Commonwealth's next witness was Donald Schwartz. Schwartz testified that at 6:00 a.m. on December 5, 2012, he discovered a blue hooded sweatshirt on his front lawn. Schwartz immediately notified the police of his discovery. Schwartz noted that the sweatshirt was not present on his lawn the previous night. The police recovered a DNA sample from the sweatshirt.

Edward Giannone testified next on behalf of the Commonwealth. Giannone, a friend of Sickle, explained that he agreed to testify on behalf of the Commonwealth in the hope that he would receive leniency on three pending cases. On the night of the robbery, Giannone testified that he received a telephone call from Sickle asking for a ride. Sickle told Giannone that he was "dope sick," "desperate for money," and willing to give Giannone "plenty of money" in exchange for transportation. N.T., Trial, 3/31/15, at 21. Sickle asked Giannone to pick him up from the gas station near the Giant Food Store at approximately 11:15 p.m. At 11:25 p.m., Giannone received a phone call from Sickle, asking Giannone to pick him up further down the road. Giannone complied, and Sickle emerged from a cluster of trees, entered Giannone's vehicle and shouted "go, go, go, get out of here." *Id*., at 27-28. Giannone drove Sickle to Norristown to buy heroin and then dropped Sickle off at his home. Before Sickle exited the vehicle, he gave Giannone sixty dollars for the ride.

The next morning, Sickle confessed to Giannone that he had robbed the Giant Food Store with a fake bomb. Sickle explained that he rode a bicycle to the Giant Food Store, hid the bicycle, and walked the rest of the way to the store. He told Giannone that he showed Hernandez the fake bomb and told her, "Look lady, I ain't playing around here, give me all the money or I'm going to kill us both." *Id*., at 31-32. Sickle expressed regret at having dropped the fake bomb once he left the store because he was afraid that the police would be able to match his DNA to the device. Ultimately, in May 2013, Giannone approached Detective William Armstrong and identified Sickle as the person who robbed the Giant on December 4, 2012.

Detective Armstrong also testified for the Commonwealth, and based upon this information, interviewed Sickle and obtained Sickle's DNA profile. Sickle's DNA profile matched one of the two DNA profiles found on the blue hooded sweatshirt.

The jury convicted Sickle of two counts of robbery,[1] one count of terroristic threats,[2] and one count of possession of an instrument of crime.[3] On July 9, 2015, Sickle was sentenced to 5 to 10 years' imprisonment for his robbery—threatening serious bodily injury conviction, 1 to 2 years'

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and (iv).

[2] 18 Pa.C.S.A. § 2706 (a)(1).

[3] 18 Pa.C.S.A. § 907(a).

- 4 -

imprisonment for his terroristic threats conviction, and 1 to 2 years' imprisonment for his possession of an instrument of crime conviction. The trial court imposed the terroristic threats conviction concurrent to the possession of an instrument of crime conviction, which was run consecutively to the sentence for robbery, for an aggregate sentence of 6 to 12 years' imprisonment. The trial court denied Sickle's timely post-sentence motion. This timely appeal followed.

Sickle's first argument on appeal is that the trial court erred in denying his post-sentence motion because the jury's verdict was against the weight of the evidence.

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (internal citations omitted).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (internal quotes and citations omitted).

Sickle contends that the verdict was not supported by the weight of the evidence because the Commonwealth's version of events relied entirely upon Giannone's testimony and Sickle's DNA on the blue hooded sweatshirt found abandoned nearby following the robbery. **See** Appellant's Brief, at 14. Sickle argues that Giannone's inconsistent trial testimony clearly indicated that Giannone fabricated his testimony in exchange for leniency in his pending cases. **See id**., at 15-16. Additionally, Sickle alleges that Giannone planted the blue hooded sweatshirt near the Giant Food Store, as evidenced by the fact that the blue hooded sweatshirt recovered by the police did not match the blue hooded sweatshirt in the Giant surveillance videotape. **See id**., at 14. Based upon these inconsistencies in the evidence, Sickle argues that his convictions should be vacated and his case should be remanded for a new trial. **See id**., at 26. We disagree.

The trial court addressed this issue as follows:

> [Sickle] contends that [Giannone's] testimony was unreliable because Giannone "fabricated his testimony to curry favor with the Commonwealth for leniency in his own criminal matters, the sentencing for which was pending at the time of trial." [Sickle] is entitled to no relief on this claim. Plainly, it is a common occurrence for witnesses to testify for the Commonwealth in hopes of gaining leniency for themselves, and this in no way entitles a defendant to appellate relief where- as here – the jury has been fully informed of the circumstances of the witness's testimony.
>
> *****

Plainly, it was for the *jurors* to decide what weight to give [Giannone's] pending criminal matters in determining his credibility.

[Sickle] also contends that the jurors should have deemed [Giannone's] testimony incredible because [Giannone] testified that [Sickle] had told him he rode his bike to the Giant Supermarket on the night of the robbery, yet no bicycle was ever recovered by the police. Once again, defendant is entitled to no relief on his claim. Stated simply, there was no evidence presented at trial that authorities ever looked for a bicycle, and the defense was free to – and did- argue that the "lack" of this evidence at trial should be considered by the jurors in weighing [Giannone's] credibility. It was for the jurors to weigh this factor in light of all of the evidence at trial, including – again – the DNA evidence.

[Sickle] contends that [Giannone's] testimony was unreliable because he testified that [Sickle] paid him three $20 bills in exchange for giving him a ride after the robbery, yet [Hernandez] testified that no $20 bills were stolen from the cash register. [Sickle's] contention entitles him to no relief. First, [Giannone] actually testified at trial that he has no present recollection as to what the denominations were of the bills with which [Sickle] paid him, although he acknowledged that he had told the police previously that it was three $20 bills and that his memory would have been fresher when he initially spoke to the police. Regardless the jurors could have determined either: 1) that [Giannone] was mistaken as to how he had been paid; 2) that [Hernandez] had been mistaken as to how he had been paid; or 3) that [Sickle] had paid [Giannone] with money he already had prior to the robbery. In short, there is nothing in this "contradiction" rendering the jury's verdict inherently unreliable. It was for the jurors to resolve and weigh the evidence as they saw fit.

Finally, [Sickle] challenged the timeline testified to by [Giannone] for the events of the night of the robbery and telephone calls [Giannone] testified he had exchanged with Sickle]. Plainly, it was for the jurors to resolve any contradictions in [Giannone's] testimony in this regard. The jurors could readily have determined that [Giannone] was inaccurate as to specific times and details, yet still telling the essential truth as to what took place on the night of the robbery.

Trial Court Opinion, filed 2/16/16, at 9-10 (internal citations omitted).

The record supports the trial court's apt reasoning. Sickle's claim that Giannone's testimony was incredible was obviously rejected by the members of the jury. Further, while Sickle alleges that Giannone planted the blue hooded sweatshirt, this was also an argument he presented at trial that the jury rejected. The jurors were the *sole* judges of credibility at trial. Ultimately, the verdict depended upon the jury's credibility determinations, which we are not entitled to review. Thus, Sickle's claim that the evidence at trial was against the weight of the evidence lacks merit.

Next, Sickle challenges the discretionary aspects of his sentence.[4] Sickle contends that the sentence imposed by the trial court was manifestly unreasonable. To do so, Sickle relies upon two arguments. First, Sickle alleges that the trial court abused its discretion by imposing consecutive, high-end, standard range sentences, which raised the aggregate sentence to an excessive level in light of the criminal conduct at issue. **See** Appellant's Brief, at 39. Next, Sickle argues that the trial court abused its discretion by imposing high end, standard range sentences without proper consideration of mitigating circumstances and Sickle's rehabilitative needs. **See id**., at 37.

---

[4] For ease of disposition, we have reviewed Sickle's claims in a different order than presented in his appellate brief.

Sickle concedes that these arguments constitute challenges to the discretionary aspects of his sentence. ***See id***.

Sickle preserved these arguments concerning the discretionary aspects of his sentence through a post-sentence motion. Thus, he is in technical compliance with the requirements to challenge the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). "Two requirements must be met before we will review this challenge on its merits." ***Id***. (citation omitted).

"First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." ***Id***. (citation omitted). "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." ***Id***. (citation omitted). That is, "the sentence violated either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005) (citation omitted).

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. ***See id***. "Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the

merits." *Id*. (citation omitted); *see also* Pa.R.A.P. 2119(f). In the present case, Sickle's appellate brief contains the requisite Rule 2119(f) concise statement. *See* Appellant's Brief, at 39-42.

Sickle is essentially objecting to the consecutive nature of his sentence. "Although Pennsylvania's system stands for individualized sentencing, the court is not required to impost the 'minimum possible' confinement." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citation omitted). The sentencing court "has the discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question." *Id*. (citation omitted). *See also* 42 Pa.C.S.A. § 9721(a). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Moury*, 992 A.2d at 171-72 (citation omitted).

An "extreme circumstance" is not present here. The trial court acted well within its discretion in imposing consecutive sentences. Given Sickle's twenty-year history of failed attempts at rehabilitation, the seriousness of his crime, and the emotional harm that Sickle inflicted on Hernandez, we find no abuse of discretion with the trial court's conclusion that a sentence of 6 to 12 years' imprisonment is reasonable and not excessive. Accordingly, Sickle's first challenge to the discretionary aspects of his sentence it without merit; it does not even raise a substantial question for our review.

Next, Sickle argues in his Rule 2119(f) statement that the trial court abused its discretion by imposing a sentence that is excessive considering the circumstances of the case without "proper" consideration of all the mitigating factors and Sickle's rehabilitative needs. Appellant's Brief, at 37. Sickle's claim here is that the trial court did not *adequately* consider mitigating factors of record.[5] This claim does not raise a substantial question for our review. **See Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*), **appeal denied**, 104 A.3d 1 (Pa. 2014) ("[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected.")

Finally, Sickle argues that the trial court illegally imposed separate sentences for robbery—threatening serious bodily injury and terroristic threats, as those crimes should have merged for sentencing purposes. **See** Appellant's Brief, at 27.[6] Sickle contends that the two statutes share the

_____

[5] The trial court reviewed the pre-sentence investigation report. **See** N.T., Sentencing,7/9/15, at 33. It was aware of, and considered, the mitigating factors.

[6] Through his appellate brief, Sickle alleges that the trial court agrees with his position that the robbery sentence and terroristic threats sentence should have merged for sentencing purposes. **See** Appellant's Brief, at 28-29. Our review of the entire record, however, reveals that the trial court was never even *presented* with this issue. Therefore, the trial court could not have agreed that the sentences should have merged. Waiver, however, is not an

*(Footnote Continued Next Page)*

elements of communication of threats, while the robbery statute requires the additional element of a theft context for the threat. *See id*. at 35. Thus, he contends, to sentence him separately on both crimes violates the rules relating to merger.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law." *Commonwealth v. Orie*, 88 A.3d 983, 1020 (Pa. Super. 2014). Accordingly, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Brougher*, 978 A.2d 373, 377 (Pa. Super. 2009).

The Sentencing Code provides as follows.

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. "Accordingly, merger is appropriate only when two distinct criteria are satisfied" (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." *Commonwealth v. Raven*, 97 A.3d 1244, 1249 (Pa. Super. 2014) (citation omitted).

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

issue. "An illegal sentence can never be waived…." *Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*) (citation omitted).

Turning to the second element first, we find that robbery—threatening serious bodily injury subsumes terrorist threats. A person is guilty of robbery "if, in the course of committing a theft, he: threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(ii). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2). Thus, to prove a robbery when there is no infliction of bodily injury, the Commonwealth must prove that the defendant, in the course of committing a theft, threatened another with immediate bodily injury, or intentionally put another in fear of immediate bodily injury.

Additionally, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly a threat to … commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). "In order to prove a violation of this provision, the evidence must show: (1) that a threat to commit a crime of violence was made; and (2) that the threat was communicated with the intent to terrorize." *Commonwealth v. Hudgens*, 582 A.2d 1352, 1357 (Pa. Super. 1990) (citation omitted). Assault is categorized as a crime of violence. *See id*.

While the phrasing is not identical, putting another in fear of serious bodily injury, an element of the robbery offense, clearly subsumes communicating a threat to cause terror, which is an element of the terroristic threats offense. Further, we have previously found that where

- 13 -

terroristic threats were a necessary part of a robbery, the two crimes merge for sentencing purposes. **See Commonwealth v. Walls**, 449 A.2d 690 (Pa. Super. 1982). Thus, to determine if there is merger, we must determine whether the terroristic threats and robbery convictions arose out of the same criminal act.

To answer this question, "[w]e must determine whether [the defendant's] actions ... constituted a single criminal act, with reference to elements of the crime as charged by the Commonwealth." **Commonwealth v. Jenkins**, 96 A.3d 1055, 1060 (Pa. Super. 2014) (internal quotation marks and citation omitted; brackets added). And to do that, we examine the criminal information, **see id**., at 1061, as well as the affidavit of probable cause and criminal complaint, **see Commonwealth v. Kimmel**, 125 A.3d 1272, 1277 (Pa. Super. 2015) (*en banc*).

Here, the information simply lists the offenses and the statutory elements. It does not charge distinct criminal acts. The criminal complaint and affidavit of probable cause likewise do not allege separate criminal acts. Further, at trial, the Commonwealth did not distinguish between which conduct was charged for each offense. Given the lack of factual detail in the criminal information in this case, and the Commonwealth's failure to distinguish the conduct charged for each offense at trial, the crimes should have merged for sentencing purposes. Accordingly, we reverse the judgment of sentence for terroristic threats at count 2 as it merges with robbery at count 1.

- 14 -

Where a case requires a correction of a sentence, this court has the option of either remanding for resentencing, or amending the sentence directly. **See**, **e.g.**, **Commonwealth v. Phillips**, 946 A.2d 103, 115 (Pa. Super. 2008). We need not remand for re-sentencing; we have not upset the sentencing scheme. The trial court imposed the sentence for terroristic threats at count 2 to run *concurrent* to possession of an instrument of crime at count 8. **See** Sentencing Order, count 2 Terroristic Threats; N.T., Sentencing, 7/9/15, at 40. The judgment of sentence as corrected in this memorandum is affirmed in all other respects.

Convictions affirmed. Judgment of sentence affirmed in part and reversed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016