J-S31006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TAVON KIRKLAND :
:
Appellant : No. 1038 WDA 2018

Appeal from the Judgment of Sentence Entered May 2, 2017
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0001318-2016

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                        **FILED JULY 12, 2019**

Appellant, Tavon Kirkland, appeals from the judgment of sentence entered on May 2, 2017, following his jury trial convictions for simple assault, robbery, conspiracy to commit robbery, and conspiracy to commit aggravated assault.[1] Although we leave Appellant's convictions undisturbed, we vacate the punishments imposed as part of Appellant's judgment of sentence and remand for resentencing consistent with this memorandum.

We briefly summarize the facts and procedural history of this case as follows.  On April 11, 2016, Appellant and James Price agreed to engage in a plot to rob a pizza delivery driver.  Erica Gutierrez was also present.  Price called Domino's Pizza and ordered pizza and chicken wings for delivery to a vacant house in Beaver Falls, Pennsylvania.  After Price called Domino's Pizza

_____

[1] 18 Pa.C.S.A. §§ 2701, 3701, 3701/903, and 2702/903, respectively.

a second time to inquire about the delivery, Appellant walked across the street while Gutierrez and Price waited for the delivery on the front porch of the abandoned residence. When the delivery driver arrived, Price asked him to make change for $100.00 and Appellant approached the driver from behind and hit him in the back of the head with a $CO_2$ pellet gun. The victim lost his glasses, fell to the ground, and Appellant and Price proceeded to kick and beat the delivery driver. Price then brandished a 9mm firearm and shot the delivery driver twice through his shoulder. Appellant and Price then fled in the victim's vehicle; Gutierrez walked away from the scene and later turned herself in to the police. The victim was able to walk to the police station where he reported the crimes. Police transported the victim to the hospital where it was determined that he had suffered two gunshot wounds. One bullet passed directly through the victim, while the second shot passed through his lung and diaphragm and lodged in his liver, where it remains. The victim, however, recovered. Police discovered the victim's car a few weeks after the incident in Rochester, Pennsylvania. They found the victim's cellular telephone that he left in his car and a Domino's Pizza car sign on First Avenue in Beaver Falls, Pennsylvania. Police also found the wallet of the victim's wife and a child's car seat that had been in the victim's car in a dumpster near the abandoned vehicle. Subsequent police investigation connected the cellular telephone used to call Domino's Pizza to Price and Price's uncle.

A three-day jury trial commenced on March 13, 2017. The Commonwealth presented the testimony of the victim, Gutierrez, Joselyn

Milliner,[2] Detective Sergeant Thomas Lococco, and treating physician, Dr. Eunice Chang. Appellant testified on his own behalf and did not present any other witnesses. At the conclusion of trial, the jury convicted Appellant of the aforementioned charges.

On May 2, 2017, the trial court sentenced Appellant to an aggregate term of eight-and-one-half to 22 years of imprisonment. More specifically, the trial court sentenced Appellant to seven-and-one-half to 20 years of imprisonment for conspiracy to commit robbery. The trial court imposed a concurrent sentence of six to 20 years for conspiracy to commit aggravated assault. On Appellant's robbery conviction, the trial court imposed a sentence of 19 to 84 months of incarceration to run concurrent to the sentences for conspiracy to commit robbery and conspiracy to commit aggravated assault. On the simple assault conviction, the trial court sentenced Appellant to 12 to 23 months of imprisonment to run consecutive to the other three sentences imposed.

On February 1, 2018, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546, alleging

---

[2] Joselyn Milliner is Price's cousin. N.T., 5/13/2017, at 159. She was 17 years old at the time of trial. *Id.* She testified that she, Appellant, and Price lived together at the time of the crimes. *Id.* at 160. Milliner testified that, the day after the crimes, Appellant was upset that Price was telling people about the incident. *Id.* at 168. Milliner also testified that Appellant told her that he and Price did not take any money from the victim. *Id.* at 168 and 172-173.

ineffective assistance of counsel for failing to file post-sentence motions or a direct appeal. The trial court appointed counsel who filed an amended PCRA petition requesting *nunc pro tunc* reinstatement of Appellant's direct appellate rights. The Commonwealth conceded to reinstatement of Appellant's direct appeal rights. On June 19, 2018, the trial court granted *nunc pro tunc* relief. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

1.) Whether the Commonwealth presented sufficient evidence to support the guilty verdict found by the jury?

2.) Whether the jury's verdict of guilt goes against the weight of the evidence presented by the Commonwealth?

3.) Whether [] Appellant's trial [] counsel thoroughly examined, or had the opportunity to examine the potential jurors during *voir dire*, in particular, one juror who was seated on the jury and who later revealed, during the trial, that she had a [familial] relationship with a member of law enforcement?[4]

---

[3] Appellant filed a counseled notice of appeal on July 18, 2018. On July 19, 2018, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel for Appellant complied timely on August 8, 2018. On August 28, 2018, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

[4] On this claim, counsel for Appellant solely contends that "[u]pon a more thorough review of the record, undersigned counsel for [] Appellant reserves the right to raise this issue as part of a future PCRA proceeding, if necessary." Appellant's Brief at 10. Claims sounding in ineffective assistance of counsel are properly brought on collateral review under the PCRA. **See Commonwealth v. Padilla**, 80 A.3d 1238, 1247 n.10 (Pa. 2013). Thus, we need not address this issue presently. Moreover, Appellant raised this issue for the first time in terms of trial court error in his Rule 1925(b) statement

Appellant's Brief at 3.

In his first issue presented, Appellant argues that the Commonwealth failed to prove beyond a reasonable doubt that he committed the crimes for which the jury convicted him. *Id.* at 7-9. "He maintains that the Commonwealth did not establish that he shot [the victim] while facilitating, attempting, or committing a robbery or that he was an accomplice to the robbery that resulted in the serious bodily injuries suffered by [the victim]." *Id.* at 7. Appellant asserts that, "there was no evidence presented that he acted in concert with Price" and, instead argues that Price "acted independently and spontaneously in committing the aggravated assault." *Id.* Appellant claims that his unrebutted testimony established that Price and Gutierrez were acting together. *Id.* at 8. Appellant relies upon his trial testimony that "he decided to walk away and not take part." *Id.* at 9. Alternatively, he argues that Gutierrez's trial testimony was uncorroborated and came from a "corrupt and polluted source."[5] *Id.* at 8. Thus, Appellant

_____

and he cannot raise a new theory for relief on appeal based upon trial counsel ineffectiveness. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court cannot be raised for the first time on appeal."); *see also Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017) ("A new and different theory of relief may not be successfully advanced for the first time on appeal."). As Appellant has abandoned any request for direct review of alleged trial court error, we need not examine this contention at this time.

[5] In conjunction with his sufficiency of the evidence claim, Appellant also suggests that trial counsel was ineffective for failing to request a "polluted and corrupted source" jury instruction. Appellant's Brief at 9. He acknowledges, however, that such claim is properly raised in a future PCRA petition. *Id.* We

- 5 -

contends the Commonwealth failed to present sufficient identification evidence to sustain his convictions. ***Id.***

This Court has previously determined:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Williams***, 176 A.3d 298, 305–306 (Pa. Super. 2017) (internal citations, quotations, and original brackets omitted).

Initially, we reject Appellant's suggestion that we re-weigh the evidence in the light most favorable to him and usurp the jury's credibility determinations regarding Gutierrez. As our standard of review requires, we may not substitute our judgment for the jury's determinations. Gutierrez testified that Price ordered food from Domino's Pizza to be delivered to the abandoned house, Appellant went across the street before the delivery, and then came up behind the victim and hit him with a "$CO_2$ cartridge gun […i]n

agree and will not address this portion of Appellant's premature claim. ***See Padilla***, ***supra***.

the back of the head." N.T., 5/13/2017, at 104-105. Gutierrez testified that when the victim fell to the ground, Price and Appellant beat him simultaneously, and then Price shot the victim twice. *Id.* at 105. She stated that both men fled in the victim's car. *Id.* This was sufficient evidence to identify Appellant as a participant in the crimes.

Moreover, we reject Appellant's contention that Gutierrez's trial testimony was uncorroborated. While Appellant testified that Gutierrez was involved in the incident instead of him, the victim testified otherwise. The victim testified that Price was standing on the porch of the abandoned house and that "a Latino female [was] **behind** [Price]" when the victim was struck from behind. N.T., 5/13/2017, at 37 (emphasis added). More specifically, the victim testified that the female was sitting on a railing behind Price when Price took the pizza from the victim and that a third individual struck him from behind. *Id.* at 38; *id.* at 78-79 ("I said there was a third person, because if there's two people I'm staring at and I get hit from behind, I don't see them wrapping their arms around me and hitting me in the back of the head."); *id.* at 80 ("It would have had to have been somebody other than the Latino [woman] and the black male that I met with on the porch."). The victim also testified that "two black **males**" took his car after he was beaten. *Id.* at 72 (emphasis added). Finally, the following exchange occurred at trial:

> [The Commonwealth]: [H]ow many people acted together to beat you?
>
> [The victim]: Two.

- 7 -

[The Commonwealth]: And how many people took your vehicle?

[The victim]: Two.

[The Commonwealth]: And your cell[ular] phone?

[The victim]: Two.

[The Commonwealth]: And your child's booster seats?

[The victim]: Two.

[The Commonwealth]: And your wife's wallet?

[The victim]: Two.

[The Commonwealth]: And it was not the Latino female that you saw?

[The victim]: Correct.

*Id.* at 82.

Taken together, we conclude that the Commonwealth presented sufficient evidence that Price and Appellant worked in concert with one another to assault and rob the victim. While Appellant testified that he walked away from the incident and claimed that Gutierrez was the second actor, the record belies Appellant's argument. Accordingly, we conclude that there is no merit to Appellant's first issue.

Next, Appellant claims that the verdict was against the weight of the evidence. On this issue, Appellant argues, in sum:

Here, the [t]rial [c]ourt abused its discretion by not instructing the jury as to accomplice testimony []. Although Gutierrez was not charged as an accomplice in the instant case, the jury should have been instructed that they should have considered that she received leniency from the Commonwealth when judging her credibility. The record of evidence at trial supported giving that

instruction as part of the [t]rial [c]ourt's charge. [] Appellant argues that it is a shock to one's sense of justice that the jury was not told to consider th[at] Gutierrez was, in fact, a corrupt and polluted source. Had the jury been given that instruction, the outcome of this case may have gone in favor of [] Appellant.

Appellant's Brief at 10.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Sebolka***, 205 A.3d 329, 341 (Pa. Super. 2019) (internal citations and original emphasis omitted).

Initially, we note that while the trial court granted Appellant *nunc pro tunc* relief, Appellant did not preserve his weight of the evidence claim as required under Pa.R.Crim.P. 607(A).[6] Moreover, on appeal, Appellant simply

---

[6] (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

has not presented a weight of the evidence claim for our review. Instead, Appellant faults the trial court for failing to give a "corrupt source" jury instruction. Appellant did not present any allegation of error pertaining to jury instructions in his statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), the trial court never ruled on such a claim, and we cannot address it for the first time on appeal. *See* Pa.R.A.P. 302(a); **Cline**, 177 A.3d at 927 ("A new and different theory of relief may not be successfully advanced for the first time on appeal."); *see also* n. 5 **supra**.

For all of the foregoing reasons, Appellant is not entitled to relief on the issues presented on appeal. Accordingly, we affirm Appellant's convictions. However, upon further review of the record, we conclude that the trial court imposed an illegal sentence. A challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower courts to be reviewable and may even be raised by an appellate court *sua sponte*. **See Commonwealth v. Bebout**, 186 A.3d 462, 466 (Pa. Super. 2018), *citing* **Montgomery v. Louisiana**, –– U.S. ––, 136

_____

(3) in a post-sentence motion.

Pa.R.Crim.P. 607. Upon review, Appellant did not raise his weight claim via one of the three options available pursuant to Rule 607. An appellate weight challenge is an assessment of the trial court's exercise of discretion and, thus, the trial court must rule on that issue first. As such, Appellant has waived his weight of the evidence claim. **See Commonwealth v. Kinney**, 157 A.3d 968, 972 (Pa. Super. 2017).

S.Ct. 718 (2016) (stating that because "[a] conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void[, i]t follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule"). Here, as we discuss in detail below, the trial court illegally sentenced Appellant for two conspiracy convictions that culminated during the commission of the same crime, despite a statutory prohibition under 18 Pa.C.S.A. § 906. This issue implicates the legality of Appellant's sentence. *See Commonwealth v. Jacobs*, 39 A.3d 977, 982 (Pa. 2012) (opinion announcing the judgment of the court) ("[S]eparate sentences […] barred by Section 906's prohibition of multiple sentences for inchoate crimes […] relates to the legality of sentence[].").  An issue relating to legality of sentence presents a question of law for our review.  *Id.* (citation omitted). "When addressing such questions of law, we employ a plenary scope of review, and our standard of review is *de novo*." *Id.*

We begin with the definition of conspiracy, which is as follows:

**(a)** **Definition of conspiracy**.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S.A. § 903(c). "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S.A. § 906.

In **Jacobs**, our Supreme Court examined the application of Section 906 in circumstances relevant to those currently before us:

> The full text of Section 906 of the Crimes Code, entitled "Multiple convictions of inchoate crimes barred," provides as follows: "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S.A. § 906. [...T]he Superior Court has interpreted "convicted" in Section 906 to mean the entry of a judgment of sentence, rather than a finding of guilt by the jury. **See Commonwealth v. Grekis**, 601 A.2d 1284, 1295 (Pa. Super. 1992) ("Section 906 is designed to eliminate multiple convictions, *i.e.*, judgments of sentence, for conduct which constitutes preparation for a single criminal objective."); **Commonwealth v. Maguire**, 452 A.2d 1047, 1049 (Pa. Super. 1982) (rejecting the defendant's argument that "convicted" in Section 906 is equivalent to the jury's verdict: "When the law speaks of a 'conviction,' it means a judgment, and not merely a verdict, which in common parlance is called a 'conviction.'"). [Accordingly,] it is not a violation of Section 906 for the jury to find a defendant guilty of multiple inchoate crimes designed to culminate in the same crime; a problem arises only when the trial court imposes multiple sentences for those inchoate crimes that are designed to culminate in the same crime.

*            *            *

Applying Section 906, [our Supreme Court has] held that "inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Commonwealth v. Graves*, 508 A.2d 1198, 1198 (Pa. 1986) (*per curiam*). In determining whether inchoate crimes are directed to the commission of the same crime, [our Supreme Court has] taken a narrow view of the object crime. In *Graves*, for example, the defendant was convicted and sentenced for criminal conspiracy and criminal solicitation for his part in an incident in which he conspired with fellow gang members to assault three police officers, and individually solicited one gang member to murder one police officer. *Id.* at 1199 (Zappala, J., dissenting). Consecutive sentences were imposed for the conspiracy and solicitation. On appeal, [our Supreme] Court approved of the two sentences. [*Graves*] held that [] review of the record revealed that even though the two inchoate crimes arose out of the "same incident," they were directed at different ends, and therefore did not merge at sentencing: the defendant conspired to assault three police officers and discreetly solicited the murder of one of the officers. [*Id.*] at 1198. Thus, a person may be convicted and sentenced for two inchoate crimes that arise out of the same incident which were not designed to culminate in the commission of the same crime.

*Jacobs*, 39 A.3d 977, 982–983 (original brackets omitted; new brackets added).

Moreover, this Court has determined:

A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal.... A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy.... Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

- 13 -

*Commonwealth v. Troop*, 571 A.2d 1084, 1089–1090 (Pa. Super. 1990);

*see also Commonwealth v. Henkel*, 487 A.2d 1010, 1013 (Pa. Super.

1985) ("[C]onspiracy is not severable as to diverse crimes contemplated by a

single agreement[.]").

In determining whether a single or multiple conspiracy has been

established, we consider several relevant factors:

> The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Commonwealth v. Davis*, 704 A.2d 650, 654 (Pa. Super. 1997) (ellipsis

omitted).

Here, when viewing the totality of the circumstances in this case, it is

clear that there was a common plan or scheme to achieve a common, single,

comprehensive goal – the robbery of a pizza deliveryman. Considering the

factors in *Davis*, all of the crimes took place at the same time in the same

location and were committed by the same cohorts acting in concert with one

another. Thus, there was sufficient evidence showing a progression of events

from a single common agreement or understanding. *See Commonwealth*

*v. Crocker*, 389 A.2d 601 (Pa. Super. 1978) ("18 Pa.C.S.A. § 906 explicitly

bars appellant's conviction and sentencing for both criminal attempt and

- 14 -

possession of an instrument of crime[; a]ppellant's conduct [of] nighttime entry into an enclosed Bell Telephone storage lot while in possession of cable-cutting tools was designed to culminate in the commission of only one crime: theft of Bell Telephone's cable."). Hence, in this case, the trial court erred by sentencing Appellant for both conspiracy to commit burglary and conspiracy to commit aggravated assault.

Accordingly, we turn now to discuss Appellant's remedy. Generally, when there is an error in sentencing a defendant to multiple inchoate crimes, we have the option to either remand for resentencing or to amend the sentence directly. *Commonwealth v. Ford*, 461 A.2d 1281, 1289 (Pa. Super. 1983). When sentences are imposed concurrently, we can amend the punishment and avoid upsetting the overall sentencing scheme. *See Commonwealth v. Martinez*, 153 A.3d 1025, 1033 (Pa. Super. 2016). In such instances, we vacate the concurrent sentence for the lesser offense and let stand the sentence for the greater offense. *Ford*, 461 A.2d at 1298. However, in instances where consecutive sentences are imposed for inchoate offenses of equal grading,[7] we have determined it "prudent to vacate and remand, leaving it to the sentencing court to decide which one of the []

---

[7] *See* 18 Pa.C.S.A. § 905 ("[A]ttempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy").

inchoate convictions to let stand and the sentence to be entered in accordance thereto." *Id.* at 1289–1290. Finally, it is well-settled that:

> [I]f a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated so that the court can restructure its entire sentencing scheme.

*Commonwealth v. Baney*, 187 A.3d 1020, 1023 (Pa. Super. 2018), *citing Commonwealth v. Bartrug*, 732 A.2d 1287, 1289 (Pa. Super. 1999), *appeal denied*, 747 A.2d 896 (Pa. 1999) (citations omitted) (holding that the PCRA court did not abuse its discretion in vacating entire sentence before resentencing, rather than addressing only illegal part of sentence); *see also Commonwealth v. Veon*, 150 A.3d 435, 456 (Pa. 2016) (remanding for resentencing where vacating sentence of imprisonment and restitution left the "comprehensive sentencing scheme unmoored from its foundation").

Finally, we note that there is an issue concerning the merger of Appellant's sentences, which also implicates the legality of his sentence. *See Commonwealth v. Nero*, 58 A.3d 802, 806 (Pa. Super. 2012) (stating that "[a] claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence") (citation omitted). We previously determined:

> Section 9765 of the Pennsylvania Sentencing Code provides as follows regarding the merger of crimes for sentencing purposes:
>
> > No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may

sentence the defendant only on the higher[-]graded offense.

42 Pa.C.S.[A.] § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other.

*Commonwealth v. Jenkins*, 96 A.3d 1055, 1056 (Pa. Super. 2014)(case citation omitted). The *Jenkins* Court concluded that, "simple assault does not require proof of any statutory element that robbery does not also require."

*Id.* at 1062; *see also id.* at n.6 ("simple assault does not require proof of a fact which robbery does not—the assaultive conduct that is the only necessary element of simple assault is subsumed by robbery's requirement of "bodily injury" (or threat thereof)"), *citing* 18 Pa.C.S.A. §§ 2701(a)(1) and 3701(a)(1)(iv).

Thus,

the threshold question is whether an appellant committed one solitary criminal act. The answer to this question does not turn on whether there was a "break in the chain" of criminal activity. Rather, the answer turns on whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime. If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from receiving a volume discount on crime.

*Commonwealth v. Orie*, 88 A.3d 983, 1020 (Pa. Super. 2014) (cleaned up). When looking at whether crimes arose out of the same criminal act we specifically examine the crimes as charged by the Commonwealth in the criminal information. *Jenkins*, 96 A.3d at 1060-1061. Here, the criminal

- 17 -

information specifies, in relation to the simple assault charge, that Appellant struck the victim in the head with a $CO_2$ gun. This action was part and parcel of the robbery. There were no facts showing that Appellant independently engaged in a simple assault either before or after the robbery. As such, the sentence for simple assault should have merged with robbery for sentencing purposes.

Accordingly, we vacate the judgment of sentence for simple assault, robbery, conspiracy to commit robbery, and conspiracy to commit aggravated assault. As we have upset the trial court's overall sentencing scheme, we remand for resentencing. Upon remand, the sentencing court must decide which one of the two conspiracy convictions to let stand and the sentence to be entered in accordance thereto. Moreover, the trial court should not impose a sentence for simple assault, because it merges with robbery under the facts of this case.

Convictions affirmed. Case remanded for resentencing in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2019

- 18 -